THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DeLOUIS SIBLEY, Defendant-Appellant.

First District (1st Division)   No. 61945

Opinion filed August 23, 1976.

James J. Doherty, Public Defender, of Chicago (Jack L. Uretsky and Robert P. Isaacson, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and William F. Ward, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, DeLouis Sibley (defendant) was found guilty of armed robbery and sentenced to 6 to 18 years. In his appeal he contends solely that he was deprived of his statutory right to a speedy trial. Ill. Rev. Stat. 1973, ch. 38, par. 103—5.

After disposition of defendant's motion for substitution of judges, the trial was continued a number of times by agreement of the parties or on defendant's motion. On June 17, 1974, defendant answered ready for trial. The parties agree that October 11, 1974, was the 116th day in the calculation of expiration of the statutory period and that October 15, 1974, was the final permissible day for commencement of trial.

On October 11, 1974, defendant then being in custody, the State moved for an extension of time for trial because of the unavailability of a material witness. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c).) This witness was Mack Johnson, victim of the armed robbery allegedly committed by defendant. The petition for extension was unverified and was signed by an assistant State's Attorney. It alleged that attempts were made by an investigator to locate Johnson on October 3, October 7 and October 8, 1974. It further alleged that on each of these dates this attorney had spoken to the victim's sister, Mary Johnson. She had informed him that, some three weeks after defendant's arrest, Mack Johnson had been threatened by a person who had represented that she was defendant's sister and was also a policewoman. Mary Johnson also stated that on subsequent dates written threats had been slipped under the door of Mack Johnson's home. As a result, Mr. Johnson's wife became distraught and left Illinois and he had gone to find her.

The trial court conducted a full hearing on this petition. The police

investigator in effect verified the principal allegations of the petition with reference to his efforts to locate Mack Johnson, the victim, commencing with October 3, 1974. Mary Johnson, sister of the victim, testified that she did not know where her brother was, but, that he had received notes put under his door. Also, the victim's wife had told the witness that she had left the city a short time after these notes had disappeared as a result of a burglary of their home. In addition, this witness testified to threats made to the complaining witness by some "nice looking" young lady about 24 years old who had told him that she was a sister of the defendant and that, if the victim appeared in court, "he would be in trouble."

In response, the defendant called his mother who testified that defendant had three sisters. One of these ladies, some 35 years old, was unable to appear in court because she was working and was the sole support of four children. In addition, the two remaining sisters of defendant both testified that they did not at any time threaten Mack Johnson, had never seen the man, had never told him that they were policewomen, and never placed letters under the door of his apartment. Both of these witnesses testified that they had no contact with defendant subsequent to his arrest. Defendant testified in his own behalf that on October 2, 1974, he was present in court and an assistant State's Attorney told the judge that the witnesses, including Mack Johnson, were present in court on October 2, 1974, but the court had continued the case because the State's Attorney was engaged in another trial. An assistant public defender testified that on August 6, 1974, he had spoken to a third person named Katy Jones who stated that she had seen Mack Johnson, the victim, on the preceding day.

No objection was made by either side to those portions of the above summarized testimony which were hearsay. Therefore, the trial judge would have been obliged to give all of the hearsay evidence "its natural probative effect." *People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733.

At the close of the hearing, the court heard argument of counsel. Before arguments were completed, the court stated:

> "At this point I will grant an individual bond in the amount of $20,000. I would release Mr. Sibley on that bond. I would continue the matter until November 15 on that date for trial."

Counsel for Mr. Sibley then requested that the court wait for "a moment." After a pause, defense counsel, Mr. Goldberg, stated:

> "Judge, prior to issuing an 'I' Bond we would ask the Court for a ruling on the motion.
>
> "THE COURT: I would deny the motion for the extension of the term."

The following occurred:

"Mr. Goldberg: You're denying the motion for extension of the term.

The Court: Correct.

Mr. Goldberg: Then, Judge, in that case the defendant would not want the 'I' Bond at this time and would consider answering ready for trial and demanding trial.

I would indicate that our records indicate that the term is Tuesday.

The Court: I would note your request. Individual Bond in the amount of $20,000 would stand, gentlemen.

Mr. Goldberg: You are issuing, giving an 'I' Bond anyway?

The Court: Right. Whether he elects to take it, I have no control over. If he stays voluntarily, I would not consider that as being in custody. I would extend the term in [e]ffect forty days by my releasing him at this point.

Mr. Goldberg: Judge, the defendant does not wish to accept the 'I' Bond.

The Court: He doesn't have to.

Mr. Goldberg: He doesn't want to accept it.

The Court: If he fails to sign the same, I will have to be confronted with that at that point, but I am rendering a $20,000 individual bond.

What date does the State suggest then?

The Court: So there is no mistake, I would extend the term for forty days."

*  *  *

"The Court has the right at any time upon either side's motion or my own to change the bond in any way, shapre [sic] or form it deems appropriate. Under these circumstances, I deem it appropriate to set an individual bond in the amount of $20,000 which means he will be free on bond. I would continue to note he demands trial."

The court then continued the cause to November 6, 1974. On that date defendant appeared in open court with his attorney of record and moved that he be discharged pursuant to the pertinent statute on the ground that more than 120 days had elapsed since his arrest. The court denied defendant's motion and set the case for trial on November 15, 1974. On November 15, the case was again continued to November 18, 1974. On November 21, a jury found defendant guilty of armed robbery. In post-trial motions, defendant's counsel renewed his motion that defendant be discharged because of the statutory requirement of speedy trial. These motions were denied and sentence was imposed.

In this court, defendant contends that the trial judge committed

prejudicial error by issuing the individual bond on his own motion in an attempt to evade the intent of the applicable statute and that the court had lost jurisdiction to try defendant by releasing him as it did.

■■ Illinois law, reflected in the statute providing for speedy trials, requires that a defendant who is in custody be brought to trial within 120 days of his arrest. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(a).) A defendant who is at liberty "on bail or recognizance * * * " must be tried with 160 days from the date he demands trial. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b).) These relevant statutes implement the constitutional mandates for speedy trial (U. S. Const., amend. VI; Ill. Const. 1970, art. I, §8) and generally operate "to prevent the constitutional claim from arising except in cases involving prolonged delay or novel issues * * *." *People v. Anderson* (1973), 53 Ill. 2d 437, 441, 292 N.E.2d 364.

In the case before us, defendant was released from custody on the 116th day on recognizance. Therefore, it would appear that the 160-day time period for defendants "on bail or recognizance * * *" became applicable. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b).) Because he was tried within that 160-day period, no statutory violation occurred in this case and defendant need not be discharged. Consequently, we do not reach the issue of constitutional violation, because the pertinent statute was complied with.

■■ Defendant contends that by releasing him and extending the applicable time period, the trial court violated its duty to provide defendant with an impartial trial and thereby rendered the statute meaningless. We disagree. Defendant relies primarily on *People v. Gooding* (1974), 21 Ill. App. 3d 1064, 316 N.E.2d 549, *rev'd on other grounds* (1975), 61 Ill. 2d 298, which, in our opinion, presents a situation readily distinguishable from that before us. In *Gooding*, a defendant was released from custody on the 118th day by a sheriff, without authorization by the trial court. The reviewing court discharged defendant because he was not tried within 120 days, noting that (21 Ill. App. 3d 1064, 1067):

> "The release of any defendant must be accomplished in an orderly and legitimate manner. It is an absurd argument that a defendant can be incarcerated for a period of time only to be released upon the caprice of the sheriff or the State's attorney in order the avoid the 120-day rule. To sanction such conduct would amount in rendering section 103—5 meaningless."

Defendant's release in the instant case was effected by the trial judge who exercised the authority vested in him by statute to set and "alter the conditions of the bail bond." (Ill. Rev. Stat. 1973, ch. 38, par. 110—6) and to release a defendant on his recognizance (Ill. Rev. Stat. 1973, ch. 38, par. 110—2). Therefore, we cannot regard *Gooding* as authoritative in the case before us.

■■ Defendant further contends that by releasing him in the manner noted above, the trial court of its own motion intervened on behalf of the State, thereby denying defendant's right to an impartial tribunal. In this regard, defendant relies on *Ward v. Village of Monroeville* (1972), 409 U.S. 57, 34 L. Ed. 2d 267, 93 S. Ct. 80, where the Supreme Court held that a defendant's right to due process of law was violated by a hearing conducted by a mayor who had a possible interest in the outcome of the proceeding. In *People v. Gross* (1972), 3 Ill. App. 3d 421, 279 N.E.2d 492, the trial court refused to permit a defendant to present his pro se pretrial motions. This court held that the defendant had been denied due process of law. In the case before us, there is no hint that the trial judge had any interest in the result of defendant's trial or that he denied defendant an opportunity to be heard. The authorities cited by defendant are therefore inapplicable. Defendant's allegation of judicial bias rests solely upon the court's order releasing him on his own recognizance. As shown above, the court's action was in accord with applicable Illinois statutes and does not constitute prejudice merely because the result did not please defendant. Charges of judicial prejudice should not be made without reasonable basis. Such basis does not exist here as shown by the fact that no issue of prejudicial action by the trial judge has been raised by defendant relating to the jury trial at which defendant was found guilty.

■■ Administration of criminal justice with complete fairness and propriety imposes mutual obligations upon the State and the defendant. The obligation of the State in connection with the right to speedy trial by compliance with the implementing statute has been formulated many times. "The supreme court has held time and again that technical evasions of this rule by the State will not be tolerated." (*People v. Gooding* (1974), 21 Ill. App. 3d 1064, 1066, citing *People v. Spicuzza* (1974), 57 Ill. 2d 152, 311 N.E.2d 112.) Conversely, the creation and enforcement of constitutional and statutory rights for the protection of defendants cannot be used for manipulation "in such a way as to provide an avenue to escape legitimate prosecution, * * *." *People v. Ward* (1973), 13 Ill. App. 3d 745, 750, 301 N.E.2d 139, citing *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied*, 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.

■■ Defendant also urges that, by releasing him without his signature on the recognizance, the trial court released him unconditionally. To support his contention, that release on a void recognizance is unconditional, defendant relies on *People ex rel. Boenert v. Barrett* (1903), 202 Ill. 287, 67 N.E. 23. The defendant there was freed on recognizance after being convicted of a criminal offense. The trial court finally pronounced sentence after a lapse of two years. The supreme court held that defendant was to be unconditionally released because the trial court's conduct amounted to the institution of "another and different

system of parole * * * without uniformity, but wholly dependent * * * upon the discretion of the sitting judge." (202 Ill. 87, 300.) That case is readily distinguishable because defendant, in the case before us, had not been convicted of the offense charged when he was released. Such a release on recognizance is permissible in Illinois. (Ill. Rev. Stat. 1973, ch. 38, par. 110—2.) Furthermore, he was tried within the 160-day period as required by statute.

■■ Defendant contends that the recognizance was void because he did not assent to its terms by signing it. No authority is cited by defendant in support of the theory that signature by a defendant is so indispensable that it may not be eliminated by order of court. We regard this claim as a hypercritical technicality. The trial judge had authority to "alter the conditions of the bail bond." (Ill. Rev. Stat. 1973, ch. 38, par. 110—6(a).) The trial judge made a note on the face of the recognizance for the express purpose of showing that he waived defendant's signature thereon. In addition, we find that, despite repeated verbal objections by defendant's attorney to the court, defendant "conducted himself in such a manner that his assent may fairly be inferred, * * *." (*Miller v. Schloss* (1916), 218 N.Y. 400, 407, 113 N.E. 337, 339.) By appearing before the court on the date fixed for trial "as ordered by the court * * *" and submitting "himself to the orders and process of the court * * *" (Ill. Rev. Stat. 1973, ch. 38, pars. 110—10(a)(1), (2)) defendant indicated his assent to the waiver by the court of his signature on the recognizance. The enactment of this statute on bail (effective January 1, 1964) has served to render obsolete cases such as *People ex rel. Boenert v. Barrett* (1903), 202 Ill. 287, 67 N.E. 23, cited by defendant.

The trial judge acted within his authority by releasing defendant on his own recognizance (Ill. Rev. Stat. 1973, ch. 38, par. 110—2) and by altering the condition of defendant's release by waiving his signature and because defendant by his conduct assented to that release and waiver of signature. We conclude that the recognizance was valid and that the court retained jurisdiction over defendant.

■■ One further thought requires expression. This opinion is not intended as an authorization for courts or prosecutors to institute a regular practice of retaining a defendant in custody for virtually the entire period of 120 days and then permitting him freedom on a personal recognizance to effect an additional delay of 40 days before trial. Tactics of this type cannot be reconciled with the requirement of due diligence by the State to insure that there will be no claim of violation of the basic right to a speedy trial. We have not hesitated to enforce this inviolable right in the past and we will continue to be vigilant in this regard in the future. See *People v. Shannon* (1975), 34 Ill. App. 3d 185, 340 N.E.2d 129.

We will, therefore, point out the unusual circumstances existing in the

case at bar which impelled us to affirm the judgment appealed from. The merits of the ruling by the trial court that he "would deny the motion for the extension of the term" are not before us for decision. We will merely comment by stating that the issue of the lack of due diligence by the prosecution was far from one-sided. We disagree with the argument in defendant's reply that, "The state had no colorable claim to 'diligence'." The fact that the complaining witness was actually present in court on October 2, 1974, as shown by defendant's own testimony, might possibly constitute the reason for failure of the investigator to attempt to locate the witness until the following day. Until that time there may have been no need to search for the victim. We do not necessarily infer from this record that the efforts of this investigator, commencing October 3, 1974, were the very first attempts made by the State to locate the witness. Furthermore, the serious nature of the charges alleged in the State's petition for extension of time constitute an important factor and we cannot state categorically that the evidence produced by defendant was sufficient to overcome these charges.

During the pendency of this appeal, defendant made a motion for bail which we denied. Thereafter defendant sought and obtained three extensions of time for the filing of his briefs. With leave of court defendant filed a supplemental brief which the State answered. Defendant then renewed his motion to set bail. The State filed objections to this motion and defendant made a motion to strike these objections. We took these motions for decision with the cause and did our best to expedite the date of oral argument. In view of the result above reached, the motion of defendant to strike the objections of the State is denied and defendant's renewed motion for bail is denied.

The judgment order and conviction appealed from are affirmed.

Judgment affirmed.

BURKE and O'CONNOR, JJ., concur.