THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICO ADAMS *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-1461

Opinion filed April 26, 1982.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago (Ira A. Moltz, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Richard B. Levy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Rico Adams, defendant Fred Johnson and Albert Winfrey were charged in an indictment with burglary, armed robbery and armed violence. Winfrey's motion for severance was granted and defendants Adams and Johnson were tried jointly.

Prior to trial, defendant Adams filed a motion for discharge, alleging that pursuant to section 103—5(a) of the Code of Criminal Procedure (Ill.

Rev. Stat. 1977, ch. 38, par. 103—5(a)) his right to a speedy trial was violated because he was not brought to trial within 120 days from the day he was taken into custody. Adams was arrested on September 18, 1978, for the armed robbery in the case now before us. At the time of his arrest he was on parole stemming from a plea of guilty to an offense listed as murder and reduced to armed robbery. On October 8, 1978, he posted bond for the armed robbery and was released from custody. On January 8, 1979, he was arrested for a parole violation because of his arrest on the armed robbery charge. On April 23, 1979, he filed motions to quash his arrest and to suppress evidence. On May 29, 1979, he surrendered himself in exoneration of his bond. The trial court denied Adams' motion for discharge, finding that his detention on the parole warrant did not trigger the 120-day rule.

After a jury trial, defendants were found guilty of burglary, armed robbery and armed violence. The circuit court of Cook County sentenced both to extended terms of imprisonment: Adams to extended terms of 14 years for burglary and 35 years for armed robbery; Johnson to 15 years for armed robbery and an extended term of 10 years for burglary.

Defendants appeal. Adams contends that the trial court erred in denying his motion to discharge because he was not brought to trial within 120 days of being taken into custody. Both defendants contend they were denied a fair trial (1) because of alleged improper cross-examination of defense witnesses, (2) because the prosecutor made improper comments during closing argument, and (3) because defendants were improperly given extended term sentences.

Because of the contentions raised, the evidence need not be stated in detail. The record shows:

On September 17, 1978, defendants Adams and Johnson and a third person entered the house at 5222 South Green Street, Chicago, occupied by Diane Brashear, her two children, Edward Marshall, Lamont Marshall and Tony Marshall. Both Adams and Johnson had guns. The occupants were made to lie on the floor. Threats of death were made. Two radios, a gold watch, a small television set and money were taken by defendants. Adams and Johnson, after their arrest, were identified by the occupants. Both defendants presented alibi witnesses.

We disagree with Adams' contention that the trial court erred in refusing to discharge him because he was not brought to trial within 120 days of his being taken into custody. The State argues that because Adams made bail on October 8, 1979, the applicable limitation period required for a speedy trial is 160 days from the date defendant demands trial (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(b)) (the 160-day rule) and that the rule set forth in section 103—5(a) (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(a)) that a defendant be tried for an alleged offense within 120 days from the

date he was taken into custody (the 120-day rule) is inapplicable here. We agree with the State.

■■ In order to be discharged under the 120-day rule, defendant must have been in custody in connection with the charge for which he was subsequently tried. (*People v. Nettles* (1969), 107 Ill. App. 2d 143, 246 N.E.2d 29.) The issue here is whether Adams' detention on the parole warrant, which began on January 8, 1979, is to be considered as detention on the robbery, armed violence and burglary charges for purposes of the 120-day rule.

This issue was raised in *People v. Daily* (1975), 30 Ill. App. 3d 413, 332 N.E.2d 146. In that case, defendant was arrested for armed robbery on August 17, 1973. He posted bond on September 5, 1973, and was released. On September 7, 1973, he was arrested on a parole violation. He remained in custody until December 13, 1973. On that date the parole warrant was withdrawn and defendant was granted return of his bond money on the armed robbery charge. Defendant was then released on his own recognizance. The *Daily* court found defendant's detention on the parole warrant beginning on September 7 was not to be considered as detention on the armed robbery charge for purposes of the 120-day rule. The *Daily* court pointed out that this same question had been raised in *People v. Patheal* (1963), 27 Ill. 2d 269, 189 N.E.2d 309, but had not been decided.

In *People v. Patheal*, the defendant was arrested on August 20, 1959, on a warrant charging the offense of armed robbery. At the preliminary hearing on September 4, 1959, the defendant was ordered held to await the action of the grand jury. On December 11, 1959, the defendant was delivered into the custody of a State parole agent under a warrant charging him with violation of parole, and he was taken from the county jail to the penitentiary. The indictment charging armed robbery was returned by the grand jury on December 15, 1959. The defendant was discharged from the penitentiary on January 21, 1960, and was immediately taken into custody on a warrant issued under the indictment. He remained in custody continuously until February 23, 1960, when he filed his motion for discharge, which was denied. The supreme court reversed, finding that the time spent in the penitentiary would be counted in computing the period of delay involved in bringing the defendant to trial upon a different charge and because the defendant had not been brought to trial within four months of his arrest, he was discharged.

■■ We find that the court in *Daily* correctly determined that the precise issue raised in that case had not been decided by the court in *Patheal*. We note that in *Patheal* the defendant was in custody continuously from the date he was arrested on the armed robbery charge until he filed his motion for discharge. However, in *Daily* the defendant was on bond on

the armed robbery charge at the time he was taken into custody on the parole warrant. Similarly, in the case before us defendant Adams was on bond on the charges of robbery, armed violence and burglary at the time he was arrested on the parole warrant. We conclude that because defendant Adams was released on bond on the burglary, armed robbery and armed violence charges, the 160-day rule for defendants on bail or recognizance became applicable. (*People v. Griegel* (1978), 64 Ill. App. 3d 508, 381 N.E.2d 369; *People v. Sibley* (1976), 41 Ill. App. 3d 616, 354 N.E.2d 442.) The cases which follow *Patheal* all involved defendants who were in custody continuously from the date of arrest on the offense in question until the day they filed motions for discharge. See *People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375.

■■ Applying the 160-day rule here, we find that defendant Adams was not denied his right to a speedy trial. The motions to quash his arrest and to suppress evidence filed by Adams on April 23, 1979, did not constitute a demand for trial. While no magic words are required to constitute a speedy trial demand, there must be some affirmative statement in the record that requests speedy trial. (*People v. Coleman* (1977), 50 Ill. App. 3d 40, 365 N.E.2d 246.) The motions filed by Adams on April 23, 1979, cannot be construed as a communication to the court that Adams was demanding trial. Although the record reveals that Adams made a formal demand for trial on October 5, 1978, we note that he was not on bail on that date. A demand for trial made while a defendant is in custody is ineffective to trigger the running of the 160-day rule. (*People v. Byrn* (1971), 3 Ill. App. 3d 362, 274 N.E.2d 186; contra, *People v. Arch* (1975), 33 Ill. App. 3d 331, 337 N.E.2d 221.) Because Adams' formal request for a speedy trial was made while he was in custody and was never renewed at the time of filing the motion for bail or after he was admitted to bail, the running of the 160-day rule was not triggered. Defendant Adams was not denied his right to a speedy trial.

Even if the motions of April 23, 1979, are construed to be a demand for trial, defendant Adams was not denied his right to a speedy trial because the trial began well within the 160-day period.

Because we find the 160-day rule applicable here, we need not address the issue of whether a continuance granted February 5, 1979, should be attributed to defendant Adams as a delay "occasioned by the defendant" (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(a)), thereby rendering the 120-day rule inapplicable.

We also disagree with the contentions of defendants that they were denied a fair trial because (1) during cross-examination of defendant Johnson the prosecutor was allowed to question Johnson about whether he had any prior convictions, and (2) during cross-examination of defend-

ant Adams' wife the prosecutor was allowed to ask her who the father of her children was and whether defendant Adams contributed to their support.

During cross-examination of defendant Johnson, the prosecutor asked Johnson if he had ever been convicted of a crime. Defense counsel objected to the question and made a motion for mistrial which the trial court denied. A defendant who testifies in his own behalf may be impeached by a prior conviction only by the record of the conviction or an authenticated copy thereof. (*People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257; *People v. Kosearas* (1951), 408 Ill. 179, 96 N.E.2d 539; *People v. White* (1980), 84 Ill. App. 3d 1044, 406 N.E.2d 7.) Cross-examination of a defendant as to a prior conviction is improper where direct examination has not covered the subject. (*People v. White; People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096.) However, even though improper, cross-examination of a defendant as to a prior conviction does not mandate reversal unless the error has deprived defendant of substantial justice or influenced his determination of guilt. *People v. Madison* (1974), 56 Ill. 2d 476, 309 N.E.2d 11; *People v. White.*

■■ Although the cross-examination of defendant Johnson as to his prior conviction was clearly improper here, we do not reverse because of it. Where the evidence against a defendant is such that the jury could not have arrived at any other verdict, a conviction will not be reversed even though defendant was subjected to improper cross-examination regarding a prior conviction. After a careful review of the record, we find that the error did not deprive defendant Johnson of substantial justice or influence the determination of his guilt. *People v. Madison.*

During cross-examination of Rose Ann Adams, defendant Adams' wife, the prosecutor asked her who the father of her children was. Defense counsel's objection to the question was overruled. The prosecutor then asked Rose Ann if defendant Adams contributed to the support of the children. Defense counsel's objection was overruled.

Defendant Adams argues that prejudicial error was committed during this cross-examination because the paternity of Rose Ann's children and their source of support were collateral issues. We disagree.

Wide latitude should be allowed on cross-examination to establish bias of a witness. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) This is largely a matter for the sound discretion of the trial court (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Marichec* (1976), 41 Ill. App. 3d 604, 353 N.E.2d 692), and only where there is clear abuse resulting in manifest prejudice to defendant will the reviewing court interfere. *People v. Halteman; People v. Marichec.*

It is well established that a prosecutor has the right to cross-examine a defense witness in regard to his bias, prejudice or interest in the outcome

of the suit. (*People v. McGovern* (1923), 307 Ill. 373, 138 N.E. 632; *People v. Sampson* (1953), 1 Ill. 2d 399, 115 N.E.2d 627; *People v. Strickler* (1977), 47 Ill. App. 3d 419, 362 N.E.2d 28.) The feelings of bias and the relationship of the witness to defendant are never collateral. *People v. McGovern.*

■■ Rose Ann testified as an alibi witness that defendant Adams had been at her home at the time of the crime. The paternity of Rose Ann's children and whether defendant Adams contributed to their support are relevant subjects of inquiry on cross-examination because they could reveal an interest, a bias or a motive to testify falsely. We find no error in the prosecutor's cross-examination.

We also disagree with the third contention that improper comments were made by the prosecutor during rebuttal in closing argument which deprived defendants of a fair trial. Defendants cite five alleged instances of overstepping the bounds of proper argument.

The first two instances are:

> "If you believe them then you tell them to go out there and rob and kill some more. The only reason these neighborhoods are like that is because of guys like that."

> "We also have a right to a guarantee to not be in fear of our homes and when we walk down the street and we have guys like that out there.
> * * *

> They [complainants] know if these guys are found not guilty, they are coming back out on that street."

Defendants contend that the first comment was improper because the prosecutor argued that if found not guilty defendants would "kill some more" when defendants were not charged with murder and there was no evidence presented relating defendants to anyone's death in this case or in any other case. They contend that the second comment was improper as an attempt to arouse the prejudice of the jury.

In criminal appeals involving questions of improper argument on the part of the prosecutor, each case must be decided on its own facts. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Furthermore, the propriety of remarks during closing argument is generally left to the discretion of the trial court. (*People v. Rodriguez* (1980), 89 Ill. App. 3d 941, 412 N.E.2d 655.) "[A]rguments and statements based on the proof or legitimate inferences deductible therefrom do not transcend the bounds of legitimate argument" and "it is entirely proper for the prosecutor to dwell upon the evils of crime and to urge the fearless administration of the law." (*People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) "[I]t is not improper to request the jury to consider the possibility that evil results

474

might arise if defendant is released provided that such remarks are based on the evidence or legitimate inferences therefrom. [Citations]." *People v. Galloway* (1979), 74 Ill. App. 3d 624, 629, 393 N.E.2d 608.

In *People v. Johnson* (1979), 73 Ill. App. 3d 431, 392 N.E.2d 587, defendant was convicted of the armed robbery of a boy who was on his way to school. The prosecutor there stated in closing argument that if defendant is let go, one day the jurors may read in the papers that someone was shot on the street. The court there held this remark to be proper comment.

■■ We find that the prosecutor's comments here were within the bounds of legitimate argument.

■■ The third instance occurred when the prosecutor stated:

"[Defense counsel] talked about how they didn't see all the property taken and all this. * * * [Defense counsel] brought out as to what all was taken from each witness, each victim. * * * I think it was Lamont Marshall up on the stand. We didn't bring it out. We can't bring it out because it would be hearsay."

Defendants contend that this remark infers that the prosecution had access to other information which the jury had not heard. However, in defense counsel's closing argument he had stated:

"Now, we don't have any testimony about Daniel's losses, Marie's losses, or Lowell's losses. We have Diane talking about how she can see people emptying their pockets, can't see what's taken."

Defendant cannot complain that he has been prejudiced by any remarks made by the prosecutor which have been invited or provoked by defense counsel. (*People v. Galloway.*) We find that the prosecutor's comments were a legitimate response to the argument of defense counsel and thus were proper argument.

■■ The fourth instance occurred when the prosecutor stated:

"Rico Adams has one brief alibi witness, Rosie. And I feel sorry for her. And you should too. It's not her fault she got hooked up with a guy like that * * * who else is going to lie for him?"

Defendants contend that it is improper for the prosecutor to comment on the truthfulness of a witness because this is a matter to be determined by the trier of fact. However, a prosecutor may charge that a witness has lied as long as it is apparent that this opinion is based on the evidence or reasonable inferences therefrom. (*People v. Wirth* (1979), 77 Ill. App. 3d 253, 395 N.E.2d 1106.) In *Wirth*, the prosecutor stated that a defense witness who had known the defendant for five years and dated him for two months had reason to lie and did lie. The court there found that the comment was proper. Similarly here, Rose Ann was the wife of defendant Adams and would possibly have a motive for lying. We find no error in the prosecutor's comments.

The final instance occurred when the prosecutor stated:

"He [defense counsel] comes over here and he leans over and confers with his client. He thinks well he's got a little time to relax, there is no question pending. Now he thinks I don't have to pay that—attention span can only last so long—and after he confers with Rico he gets back up and he says, 'Now who was in the bedroom?' "

Defendants contend that this comment was improper because it constituted an impermissible attack on defendant through his legal counsel. The meaning and purpose of this comment is unclear to us; but, if it can be said to be improper, it did not constitute prejudicial error because, in light of the overwhelming evidence against defendants, we find that it did not constitute "a material factor" (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 263) in their convictions or that "the verdict would have been different had the improper closing argument not been made * * *." *People v. Trice* (1970), 127 Ill. App. 2d 310, 319, 262 N.E.2d 276.

We conclude that the comments of the prosecutor do not, singly or cumulatively, constitute reversible error.

Defendants' final argument is that the trial court abused its discretion when it imposed extended term sentences on defendants. Defendant Adams was sentenced to extended terms of 14 years for burglary and 35 years for armed robbery. Defendant Johnson was sentenced to 15 years imprisonment for armed robbery and an extended term of 10 years for burglary.

Section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) states:

"(b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

As to defendant Adams, at the sentencing hearing it was shown that in February of 1978 he pleaded guilty to an offense which was listed as murder and reduced to armed robbery and was sentenced to 7 years imprisonment. He was released in March of 1978. Within eight months from his guilty plea to that offense he committed the burglary and armed

robbery in the case before us. The trial judge noted that during the perpetration of the crime here, defendant Adams threatened the lives of his victims, asking them if they had "ever seen anybody get their brains blowed out?" Defendant Adams then told his victims that "he had done it before, [you] should see it squirt." He stated that "he had done time for killing somebody * * * and did not mind killing no nigger."

■■ It has been held that a court may impose an extended term when either one or both of the aggravating factors set forth in section 5—5—3.2(b) are present. (*People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E.2d 206.) Here, as to defendant Adams both factors were present. The trial court did not abuse its discretion in sentencing defendant Adams to extended terms of 14 years' imprisonment for burglary and 35 years' imprisonment for armed robbery.

■■ As to defendant Johnson, at the sentencing hearing it was shown that he had received one year probation for battery in 1971. He also had pleaded guilty to robbery in May of 1974 and served a sentence of a year and a day for that offense. Because he had previously, within 10 years, been convicted of the same or a greater class of felony, the trial court did not abuse its discretion in sentencing defendant Johnson to an extended term of 10 years imprisonment.

The convictions and sentences are affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.