THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THERON JACKSON, Defendant-Appellant.

Fourth District   No. 4—91—0926

Opinion filed October 8, 1992.

Daniel D. Yuhas and Susan E. Alesia, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Leonard, State's Attorney, of Mt. Sterling (Norbert J. Goetten, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial in Brown County on March 15, 1991, defendant, Theron Jackson, and his codefendant, Carnell Willis, were convicted of mob action. (Ill. Rev. Stat. 1989, ch. 38, par. 25—1(a)(2).) Defendant was sentenced to 18 months' imprisonment. He appeals his conviction, arguing: (1) defense counsel was ineffective because he did not comply with the requirements of section 3—8—10 of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10), entitled "Intrastate Detainers," thereby defeating dismissal of the charge against him based on denial of his right to a speedy trial; and (2) the State committed reversible error by cross-examining defendant about a previous drug problem and a drug-related conviction. Defendant also contends the trial judge's sentence was not sufficiently specific because it did not designate the sentence to which the imposed sentence was made consecutive. We affirm defendant's conviction and remand only for clarification of which judgment and sentence the imposed sentence was made consecutive.

## I. FACTS

### A. *Defense Counsel's Pretrial Actions*

The offense of which defendant was convicted arose from an attack on Gregory Pope, another inmate in the Western Illinois Correctional facility. Defendant was charged by information on March 15, 1991. On April 14, 1991, defense counsel was appointed to represent defendant. On April 15, defense counsel filed a motion for a speedy trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 103—5).

On September 12, 1991, defense counsel filed a motion to dismiss because more than 160 days had elapsed since the State charged defendant. The court denied the motion, ruling that when the defendant is in a Department of Corrections (DOC) facility, the procedures listed in the intrastate detainers provision must be followed in order to preserve a speedy-trial issue.

### B. *Trial Testimony*

Pope testified he met defendant, codefendant Willis, and the inmate who struck him, Terrance Davis, a few days before the incident. Pope was being extorted by inmate Lee Johnson. Defendant, Willis, and Davis approached Pope and told him they could protect him from Johnson. Pope stated defendant, Willis, and Davis gave

him a commissary list on three occasions and ordered him to obtain the items listed. They warned if he did not obtain the items he would get hurt.

On the day the incident occurred, defendant, Willis, and Davis followed Pope into his cell after dinner. Pope had notified prison officials of Johnson's extortion attempt and the officials agreed to move him to another cell. When defendant, Willis, and Davis noticed Pope's things were packed, they called him a "stool pigeon" and said "stooling" was not tolerated in prison. According to Pope, Willis told Davis to "bring the G down" and Davis hit Pope twice in the face.

Randy Spertzel, an inmate and Pope's friend, testified he saw three men in Pope's cell the night of the attack. The men told Spertzel to leave them alone. Later that night, Willis came to Spertzel's cell and told Spertzel if he said anything they would put "a hit" out on him.

After Davis struck Pope, the men gave him an aspirin and discouraged him from going to the infirmary. They ultimately allowed him to seek medical treatment, but told him he would be hurt if he did not report that he fell and hurt his face. He required surgical placement of metal plates and screws in his head for the injuries he sustained.

Prison official Marty Winston interviewed Pope in the prison health unit shortly after the incident. Pope told Winston the cell numbers of the men involved. Pope also identified defendant, Willis, and Davis from a six-photograph array.

Davis, who pleaded guilty to aggravated battery for striking Pope, testified that when he entered Pope's cell, defendant and Willis were present. Davis asked Pope what he told the prison officials about Johnson. When Pope admitted he told the officials about Johnson's extortion, Davis hit Pope in the face. Davis testified neither defendant nor Willis told him to strike Pope. Defendant's and Willis' testimony supported Davis' testimony. Defendant testified he did not know Davis was going to strike Pope.

During cross-examination, the State asked defendant if he had a drug problem. Defendant stated he currently had no problem because he had been rehabilitated a year or so earlier. The State inquired about when defendant was incarcerated for the sentence he was presently serving. Defendant responded he had been incarcerated since 1986 for violating his parole. The State inquired whether the offense for which defendant had been incarcerated was a drug offense. Defendant stated he was originally sentenced for drugs.

## II. Analysis

### A. *Ineffective Counsel*

Defendant's trial began 210 days after defense counsel filed his speedy-trial demand. Defendant argues defense counsel was ineffective in his efforts to ensure defendant received a speedy trial because counsel filed the motion demanding speedy trial pursuant to section 103—5 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 103—5), rather than the provision applicable to inmates during incarceration, a proper demand under which requires the defendant be tried within 160 days (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10).

■ Resolution of defendant's speedy-trial issue requires consideration of the speedy-trial provision of the Code in conjunction with the intrastate detainers provision. Section 103—5(a) of the Code states, in relevant part, every person in custody in the State for an alleged offense shall be tried within 120 days from the date he was taken into custody. (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(a).) Section 103—5(b) of the Code provides that persons on bail or recognizance shall be tried "within 160 days from the date defendant demands trial." (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(b).) Unless the delay is caused by defendant, failure to try him within the statutory time is cause for the discharge of the accused. Ill. Rev. Stat. 1989, ch. 38, par. 103—5(d).

■ Section 3—8—10 of the Unified Code makes section 103—5(b) of the Code applicable to defendants "committed to any institution or facility or program of [DOC]" who have untried complaints or indictments pending against them. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) Defendant was in DOC custody when this mob action charge was filed against him. Defense counsel was required to make the speedy-trial demand under section 3—8—10 of the Unified Code and include a statement of the place of present commitment, the term, and length of remaining term, charges pending against him, and county where the charges were lodged, addressed to the State's Attorney of the county where he is charged, with a copy to the clerk of that court and the proper DOC officer of the facility to which defendant is committed. The State's Attorney would then have been required to ensure defendant was brought to trial within 160 days. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) However, because defense counsel requested a speedy trial for defendant pursuant to section 103—5, *i.e.*, the wrong statutory provision, the 160-day period never began to run.

The State contends defense counsel was not ineffective because the mob action charge against defendant would not have been dismissed even if the appropriate speedy-trial demand had been made, *i.e.*, one brought under the intrastate detainers provision (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10). If a proper demand had been made in compliance with the latter provision, the State would simply have tried defendant within the requisite 160 days.

To establish counsel was ineffective, defendant must show counsel's representation fell below an objective standard of reasonableness and it is reasonably probable that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Horton* (1991), 143 Ill. 2d 11, 23, 570 N.E.2d 320, 325; *People v. Jackson* (1987), 162 Ill. App. 3d 476, 482, 515 N.E.2d 390, 394.

The State directs us to this court's ruling in *People v. Keys* (1990), 195 Ill. App. 3d 370, 375-76, 552 N.E.2d 285, 289, in arguing defense counsel's action did not fall below an objective standard of reasonableness because defendant did not instruct his attorney to demand a speedy trial and because the decision on whether to demand a speedy trial is a strategic matter left for defense counsel.

■ Our ruling in *Keys* is inapplicable to the present scenario. There, defendant requested that the matter be resolved as soon as possible, but made no specific request for a speedy-trial demand, and defense counsel had then explained his reasons for not filing a speedy-trial demand to defendant. (*Keys*, 195 Ill. App. 3d at 371-72, 552 N.E.2d at 286-87.) Although whether to demand a speedy trial may be a strategic decision, in this case defense counsel intended to demand this on behalf of defendant. Defense counsel demanded a speedy trial, but did so incorrectly.

Defense counsel contends when he filed the motion he did not know defendant was incarcerated in the State penitentiary. The record available to defense counsel indicated defendant was incarcerated in a DOC facility. The notice he received that he had been appointed to represent defendant indicated a copy was also sent to defendant and to DOC. The State's Attorney's April 4, 1991, writ of *habeas corpus* summoning defendant to testify was sent to the warden at Pontiac Correctional Center. The order of continuance noted a copy went to defendant and to DOC. Defense counsel filed the speedy-trial motion April 15, 1991. The record already included these indications defendant was in DOC custody.

Defendant correctly notes that by the preliminary hearing held on April 29, 1991, defense counsel knew defendant was an inmate. Testimony at the hearing included an account of what allegedly occurred between the inmates when Pope was injured. Defense counsel had a duty to represent defendant competently. Competence requires the legal skill, knowledge, thoroughness and preparation reasonably necessary for the representation. (134 Ill. 2d R. 1.1(a).) The intrastate detainers provision became law effective November 14, 1973. See Pub. Act 78—939, §1, eff. Nov. 14, 1973 (1973 Ill. Laws 3023, 3032).

In *People v. Davis* (1981), 92 Ill. App. 3d 869, 874, 416 N.E.2d 85, 88, the court stated:

"The statutory speedy trial scheme provides that a person in custody must be tried within 120 days (section 103—5(a)); persons on bail or recognizance (section 103—5(b)) and persons who have been committed to the Department of Corrections for other offenses (section 3—8—10) must be tried within 160 days of their demand for trial. Those persons imprisoned in another State against whom a detainer has been lodged must be brought to trial within 180 days after making demand for trial. (Section 1003—8—9, art. III(a).) We note too that a prisoner's right to a speedy trial under the Federal Speedy Trial Act (18 U.S.C.A. §3161(j) (Supp. 1980)) also requires a demand for trial. *United States v. Bryant* (4th Cir. 1979), 612 F.2d 806, 811.

As defendant failed to comply with the terms of the intrastate detainer statute to which she was subject the trial court erred in granting her motion for discharge."

There, the defendant was committed to DOC on a Cook County judgment, and the trial court granted a motion for discharge and dismissed pending Du Page County charges pursuant to section 103—5(a) of the Code, although no speedy-trial demand under section 3—8—10 of the Unified Code had been made. The Second District Appellate Court reversed that judgment. See generally 5 L. Pieczynski, Illinois Practice §10.3, at 274 (statutory right to a speedy trial); §10.24, at 285-86 (intrastate detainer act) (1989).

Defense counsel should have known section 3—8—10 of the Unified Code governed defendant's right to a speedy trial. His actions in this case with respect to the speedy-trial motion fell below a reasonably competent standard.

To conclude defense counsel's conduct rose to the level of incompetency requiring reversal of the conviction, however, also re-

quires a finding it is reasonably probable the outcome of the proceeding against defendant would have been different had defense counsel acted competently. *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Horton,* 143 Ill. 2d at 23, 570 N.E.2d at 325; *Jackson,* 162 Ill. App. 3d at 482, 515 N.E.2d at 394.

The State contends even if counsel was ineffective the error was harmless because the evidence presented against defendant was overwhelming.

Defendant was incarcerated for 210 days between the date defense counsel filed the speedy-trial motion and the date of trial. Defendant should have been tried within 160 days. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) The record does not indicate any reason for the delay. Although the State may have had no duty to bring defendant to trial where it relied on a State law that required defendant to make a demand for trial (*Jackson,* 162 Ill. App. 3d at 480, 515 N.E.2d at 393), neither should it evade a defendant's right to a speedy trial. (*Cf. People v. Fosdick* (1967), 36 Ill. 2d 524, 528, 224 N.E.2d 242, 245 (use of voluntary dismissal without notice to defendant).) The record indicates it did so in this case.

The State's brief contains the following concession:

"[The] State's Attorney *** was clearly apprised that the speedy trial was controlled by the Intrastate Detainer Act and that this 160-day period could not begin to run unless the formal requirements of section 3—8—10 were fulfilled. Had [defense counsel] refiled under the controlling statutory provision and preserved defendant's speedy trial request, it is much more than probable that [the State] would have brought the case to trial within the 160-day period."

The State made a similar argument during the hearing on the motion to dismiss the charges against defendant. The State's Attorney *stipulated* there was no mechanical reason, no "court-clogging" reason, that prevented the case from being brought to trial within the requisite 160 days. It was not tried within this time period because the "requisite conditions to commence the running of the 160-day period were not satisfied." The prosecutor here is not contending the press of duties prevented proper preparation of the case or that witnesses were unavailable. He does not suggest other cases with proper speedy-trial demands preempted this defendant's case from being brought to trial. He does not assert he was understaffed or over-burdened. We commend the prosecutor on his candor, but not his practice. The State simply relied on defense counsel's error in failing to set defendant's trial within 160 days.

The prosecutor is an administrator of justice and an advocate who must exercise sound discretion in the performance of his or her functions. (ABA Standards, Criminal Justice §3—1.1 (2d ed. Supp. 1986).) We question the exercise of that discretion in this case. A prosecutor should not intentionally use procedural devices to support delay when there is no legitimate basis. (ABA Standards, Criminal Justice §3—2.9(a) (2d ed. Supp. 1986).) The State's Attorney knew defendant was incarcerated in DOC. The State's brief indicates defendant's trial was not delayed because of case backlog. Rather, the State's Attorney did not try defendant within the 160 days of the purported speedy-trial demand because he knew defense counsel erroneously cited section 103—5 of the Code, rather than section 3—8—10 of the Unified Code, and did not fulfill the terms of the latter section in requesting a speedy trial. This was an inappropriate reliance on the procedural requirements of section 3—8—10 of the Code, particularly when the information that would have been contained in a proper demand was already known to the prosecutor.

However, the record does not support the conclusion that if defense counsel had filed the appropriate speedy-trial demand the State would not have brought defendant to trial within 160 days. We cannot presume the State would not have tried defendant within the required time. We simply do not know what would have happened had defense counsel filed a proper intrastate detainers motion. Based on the evidence, defendant cannot meet the second prong of *Strickland, i.e.*, a reasonable probability that but for his counsel's error in preparing his speedy-trial demand, the result of the proceeding would have been different. Despite this inadequacy in legal representation by defense counsel, and conduct by the State's Attorney which was imprudent for one in that position, we are not bound to reverse defendant's conviction on this issue.

Defense counsel should competently prepare their cases. Criminal defendants have a right to adequate representation to ensure their statutory, as well as constitutional, rights are protected. Prosecutors should proceed with trials in a timely manner. If counsel in this case properly carried out their duties defendant would have been timely prosecuted and would have had no timeliness complaint to raise on appeal. In addition, the lawyers in this case provide reason for defendants and the public to be suspect when dealing with members of the legal profession. More attention to their duties would advance justice and promote faith in the process. Neither goal is achieved by the examples set in this case.

## B. *Improper Cross-Examination*

Defendant argues the State committed reversible error when it improperly cross-examined him on whether he had a drug problem without supporting that point with proof. He also argues reversible error occurred when the State confronted him with a previous drug conviction because this type of impeachment must be accomplished by producing the record or an authenticated copy of the conviction.

The State contends it was not cross-examining defendant under the method afforded by the rule allowing impeachment by introduction of conviction records. Rather than seeking to prove the fact of the drug conviction, the State maintains it was attempting to elicit evidence that defendant was a drug user. The State argues defendant's admission that he was originally sentenced for a drug offense established he was a drug user without the prosecutor furnishing a record or authenticated copy of the conviction, and written proof was not necessary. It also argues defendant has waived review of this issue by failing to object at trial or to raise the issue in a post-trial motion.

Defendant argues that when asked whether he had a drug problem, he answered he had been rehabilitated; he contends his admission of a drug conviction did not rebut the claim of rehabilitation. He also argues the State did not use his drug conviction to prove he had used drugs, but that the prosecutor instead argued in closing that defendant had tried to "conceal" this problem and his conviction, *i.e.*, to show defendant lied to the court.

### 1. Waiver

To preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 884, 572 N.E.2d 1219, 1226.) Here defendant made no objection to this cross-examination at trial, nor did he raise the issue in a post-trial motion. Defendant by reply brief suggests since defense counsel raised an objection during the State's earlier cross-examination of codefendant Willis, which objection was overruled, that objection sufficiently preserved these matters in his case. This premise is incorrect and we find this issue has been waived. Moreover, we note the objection made during cross-examination of codefendant Willis was about his impeachment with prior arrests *rather than* with felony convictions or crimes of dishonesty. That specific objection

waived all others and no objection was made to Willis' cross-examination on whether he had a drug problem or drug-related convictions.

## 2. Consideration on the Merits

Defendant argues these matters destroyed his credibility and affected the outcome of his trial. (See 134 Ill. 2d R. 615(a).) He directs us to the trial judge's comment before pronouncing judgment that the case presented a question of credibility. The case necessarily presented a credibility issue. Defendant's witnesses were himself, codefendant Willis, and Davis, who had pleaded guilty to the aggravated battery of Pope; the testimony of defendant and Willis could reasonably be viewed as self-serving, and Davis had nothing to lose by testifying on behalf of defendant and codefendant Willis, since he had already been sentenced. By contrast, the victim and the other witnesses who identified defendant and codefendant Willis, and whose testimony intimated that defendant and codefendant Willis had ordered the attack on Pope, had nothing to gain by their testimony and had no motive or reason to lie.

Evidence which suggests a defendant committed crimes other than the one charged is generally inadmissible unless relevant to some issue in the case. (*People v. Herrett* (1990), 137 Ill. 2d 195, 207, 561 N.E.2d 1, 6; *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.) The rule has been stated that it is improper to cross-examine a defendant as to his conviction of a crime. (See, e.g., *People v. Flynn* (1956), 8 Ill. 2d 116, 120, 133 N.E.2d 257, 259; *People v. Adams* (1982), 106 Ill. App. 3d 467, 472, 435 N.E.2d 1203, 1207.) The proper method for impeaching a defendant's credibility is by means of the record of conviction or an authenticated copy thereof. (See *People v. Madison* (1974), 56 Ill. 2d 476, 488, 309 N.E.2d 11, 18.) An exception to the rule permits cross-examining a defendant about convictions when he has testified about his prior convictions on direct examination. *People v. Johnson* (1990), 206 Ill. App. 3d 318, 322, 564 N.E.2d 232, 235.

Cross-examination of a defendant about a prior conviction has been held improper where direct examination has not covered the subject. (*Adams*, 106 Ill. App. 3d at 472, 435 N.E.2d at 1207.) Nevertheless, reversible error does not result unless the error has deprived defendant of substantial justice or influenced the determination of his guilt. (*Madison*, 56 Ill. 2d at 488-89, 309 N.E.2d at 18; *Adams*, 106 Ill. App. 3d at 472, 435 N.E.2d at 1207.) We note, however, that *Adams*, cited by defendant, and other cases cited on this

point arose in the context of jury trials. As stated in *Madison*, this rule is founded upon the possibility a defendant might be prejudiced during a jury trial if he is forced to testify concerning prior convictions. (*Madison*, 56 Ill. 2d at 488, 309 N.E.2d at 18.) This case was a bench trial, with the circuit judge sitting as trier of fact.

As to the cross-examination on whether defendant had a drug problem, or the suggestion of drug use, it is under limited circumstances that drug use may be relevant to impeach a witness' ability to observe, or narcotics addiction to undermine a witness' credibility (see *People v. Smith* (1968), 41 Ill. 2d 158, 161, 242 N.E.2d 198, 200). (See generally 6 L. Pieczynski, Illinois Practice §22.64, at 48 (1989); R. Hunter, Trial Handbook for Illinois Lawyers, Criminal §40.16, at 547-49 (6th ed. 1989).) We fail to see how any of these or other circumstances made this evidence relevant to this case.

▮ Nevertheless, in a bench trial, there is a presumption the court considered only competent and proper evidence in reaching its decision. (*People v. Nuccio* (1969), 43 Ill. 2d 375, 394, 253 N.E.2d 353, 363.) This presumption is negated when the trial court admits improper evidence over defendant's objection and the record shows it was improperly considered, as in the case cited by defendant, *People v. Alford* (1982), 111 Ill. App. 3d 741, 744, 444 N.E.2d 576, 579. Unlike *Alford*, here there was no objection and nothing in the record suggests the trial court gave this evidence any consideration whatsoever. There was sufficient proper evidence to sustain the conviction and the evidence was not so closely balanced as to require a new trial.

### C. *Insufficient Explanation For Sentence*

Defendant argues the trial court erred by not identifying the sentence to which his mob action sentence was made consecutive. After sentencing defendant to 18 months' imprisonment, the trial judge stated, "[t]he sentence[s], of course, *** are consecutive sentences to what they are now serving with the [DOC] with the State of Illinois."

▮ The State concedes the trial judge erred by not specifically identifying which sentence(s) the mob action sentence would follow. We agree the trial judge's error requires the case be remanded for further clarification. A sentence must be specific so it does not require additional construction. *People v. Freeman* (1981), 95 Ill. App. 3d 297, 301, 420 N.E.2d 163, 166; *People v. Logan* (1974), 23 Ill. App. 3d 41, 42, 318 N.E.2d 94, 95-96.

Defendant's case must be remanded for the limited purpose of allowing the trial judge to state with particularity the sentence(s) to which the sentence in this case is to be consecutive.

Affirmed in part, and remanded in part.

GREEN, P.J., and COOK, J., concur.