# No. 21419.

## John Max Espinoza v. Harry C. Tinsley.

(409 P.2d 835)

Decided January 17, 1966.

ROGER M. BREYFOGLE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SCHAUER.

PLAINTIFF in error will be referred to as petitioner, or by name, and defendant in error Tinsley, who was the warden of the Colorado State Penitentiary, will be referred to as the respondent.

This is the second time the issues herein involved have been before this court, each writ of error having been directed to an order of the district court, before whom three petitions were filed, which denied Espinoza's petition for writ of habeas corpus.

Petitioner's first petition was filed in the district court on March 15, 1963, and denied on April 4, 1963. On review this court reversed the judgment of the district court and remanded the cause with directions to issue the writ and proceed to a hearing on the merits. *Espinoza v. People,* 154 Colo. 347, 390 P.2d 941 (1964). Espinoza filed another petition, writ of habeas corpus issued as directed by this court, a return to the writ and answer to the return were filed, and hearing was had on the merits. On April 30, 1964, the district court discharged the writ. Motion for a new trial was filed and denied and Espinoza prosecutes this writ of error. Throughout

the current proceedings, petitioner was represented by court-appointed counsel and permitted to prosecute his petition as an indigent person.

The undisputed facts, as developed from the testimony of the associate warden, the parole supervisor and the custodial officer of the penitentiary, the officer in charge of the medium security unit, a handwriting expert, the petitioner himself, and the exhibits admitted by the trial court, are as follows: Petitioner was convicted of the crime of burglary in the district court of the City and County of Denver and sentenced to a term of from six years to ten years in the state penitentiary, where he was received on March 27, 1959. At a time not specified, he had been sentenced by the Federal District Court in Denver to a term of three and one-half years in a federal penal institution, to run concurrently with the term imposed by the state district court. A federal detainer had been placed against him, which was in the hands of a United States marshal.

On May 19, 1960, the governor of Colorado entered an order commuting petitioner's minimum sentence to two years, which would result in his release to the federal detainer on July 5, 1960. The maximum sentence was not affected. The warden recommended petitioner as a good parole risk at the time of the commutation order, but had definitely changed his mind at the time revocation of the parole was ordered. The governor did not actually grant a parole because such action is a prerogative of the State Parole Board.

At a meeting of the parole board on June 23, 1960, petitioner was paroled to the federal detainer as of July 4, 1960, so that he could be released to the United States marshal on the following day. He signed a written "Waiver of Extradition," in which he stated, as a condition of his parole, that he waived extradition to the state of Colorado from any state in the Union and agreed that he would not contest any efforts to return him to

Colorado. This was addressed to the Interstate Compact Administration. A similar document, denominated an "Agreement to Return," was signed by petitioner and filed with the State Parole Board. On July 4, 1960, he signed, at the office of this board at the penitentiary, a "Parole Agreement" setting forth the instructions to be followed upon his return to Colorado after serving his federal sentence, to all of which instructions he agreed.

During the original proceedings, reviewed by this court, he had denied signing a "Parole Agreement," but at the later hearing the authenticity of this agreement was established by the testimony of a handwriting expert, and petitioner did not further dispute the question, apparently having abandoned his position concerning his signature.

The hearing before the trial court after remand from this tribunal revealed that after petitioner served the balance of the term imposed by the federal court he was granted a "Conditional Release" on December 4, 1961. He was then returned to Colorado, still subject to the conditions imposed on him by his parole agreement, and remained free of custody under his parole.

The evidence also revealed that on May 29, 1962, petitioner purchased a 45-caliber gun in Denver. He also left the state of Colorado without permission of his parole officer and failed to make reports required, including reports of his changes of address. For these violations of the conditions of his parole, all specifically included in the parole agreement, on August 10, 1962, his parole was revoked and he was returned to the penitentiary. In October 1962 he was taken from the main institution to an area outside the prison walls, known as the medium security unit, from which he escaped on November 17, 1962. He was traced to Colorado Springs, where he was found in jail charged with the larceny of an automobile. His excuse for his escape was that he intended to attempt a reconciliation with his

wife, who was threatening divorce proceedings. He was returned to the confines of the penitentiary.

On May 2, 1963, petitioner was reported missing and was found hiding in a hole near the prison wall, which he had covered with boards and sand, late in the afternoon, at which time it was not customary for any inmate to be in that area. His excuse for this escapade was that he expected to remain hidden until the next morning, when he would report at the gate and be readmitted, in the hope that this altruistic procedure would give him wide publicity as an honest man and so appeal to the heartstrings of some prominent attorney as to impel him to offer his services to assist petitioner in securing his release from "durance vile." Since this experience, petitioner has been within the walls of the penitentiary, classified as a parole violator and held under the mittimus of the Denver district court.

Counsel for petitioner gives the following summary of his argument for reversal of the district court:

"(1) The sole question to be determined is whether Petitioner on June 30, 1960, was released from the State Penitentiary on parole, *i.e.* by the parole agreement dated July 4, 1960, or whether he was released from said institution by virtue of an executive order of the Governor.

"(2) If the Petitioner was released by virtue of the executive order, the State of Colorado has waived further jurisdiction over Petitioner for the unexpired portion of the sentence he was then serving."

■ In considering argument No. 1, we find that the governor's commutation reducing the minimum sentence provided eligibility for the petitioner to be released on parole by the State Parole Board in exercising its statutory prerogative. The governor's commutation order made no reference to a release on parole.

■ As to argument No. 2, petitioner's counsel quotes from 67 C.J.S. 602, Pardons, § 19, a statement which is particularly pertinent to the facts in this

case, involving a principle which he quickly abandoned, to wit:

*"Effect of commutation.* A board of parole has no authority to grant a parole interfering with the prior exercise of the power of conditional commutation by the governor under constitutional authority; and a prisoner whose sentence has been commuted by the governor does not, by signing a parole agreement, render himself amenable to the jurisdiction and process of the board. *Where, however, a commutation reduces only the minimum sentence imposed,* and does not affect the maximum sentence or order release from custody, the convict remains subject to the jurisdiction of the parole board until the expiration of the maximum term; \* \* \*."

(Emphasis supplied.)

Counsel cites the case of *People v. Bartley,* 383 Ill. 437, 50 N.E.2d 517 (1943), which holds that the waiver of jurisdiction over a fugitive is a prerogative of the governor and that his extradition warrant takes priority over all state process by which a fugitive is held. We have no quarrel with this theory, but the case is not applicable to the facts in this case. He also cites the case of *Jones v. Morrow,* 154 Kan. 589, 121 P.2d 219 (1942), which holds that once a sovereign releases an inmate of its penitentiary, by executive order, to another sovereign, it has waived jurisdiction to further confine the prisoner upon his release by the second sovereign. As applied, the principle of waiver operates only to defeat extradition and not the state's authority to require the completion of sentence once the prisoner is in the state.

In this case, the governor's commutation did not effect Espinoza's release, which was effected by the action of the State Parole Board in granting parole, which is not a discharge but a change in type of custody. *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353 (1962).

Counsel cites one more case in which he admits

that the factual situation is not comparable with the facts in this case, and states "in all candor" that there are authorities in conflict with the cases he cites. He further argues that the commutation of sentence should be constructed liberally in favor of a prisoner, and hence Espinoza's commutation should be construed to be a conditional pardon, an argument which is not supported by any authorities. In this case, the governor's commutation was not an implied pardon, as contended, nor did it effect Espinoza's release. It simply reduced his minimum sentence making him eligible for parole, which parole was granted by the State Parole Board, the parole effecting his release, a change in the form of custody but not a discharge. Petitioner, at the time of the revocation of his parole, was in the constructive custody of the state and is presently in the lawful custody of the respondent herein.

Following the directions of this court in the original Espinoza case, the lower court issued writ of habeas corpus and proceeded to a comprehensive hearing on the merits. At the conclusion of the hearing the trial court discharged the writ.

We find no reversible error in the record, which amply sustains the judgment of the trial court.

The judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE PRINGLE concur.