THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARGARET JEAN FREEMAN, Defendant-Appellant.

Fourth District    No. 16293

Opinion filed April 16, 1981.

Daniel D. Yuhas and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant pleaded guilty to the offense of theft in violation of section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1). The amount alleged was less than $150, but since defendant had a prior conviction for theft, the offense became punishable as a Class 4 felony (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(1)). She applied for treatment under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*) and after first denying such application, the trial court granted it. Pursuant to the provisions of section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.10) the trial court sentenced defendant to 3 years' probation with conditions that defendant comply with any placements made by the department of Mental Health for the treatment of her addiction, that she comply with all the rules and regulations of any institution in which she might be placed by the Department or by the probation office of Champaign County, and that she observe any requirement set down by the Department for her supervision by an agency for treatment of her addiction. No questions are

raised concerning the validity of the proceedings under section 10 of the Dangerous Drug Abuse Act.

On April 3, 1979, defendant was assigned by the Department of Mental Health under the authority of the probation order to the Gateway House Foundation Residential Drug Treatment Program. This facility is located in Springfield, Illinois. On May 31, 1979, defendant left the facility and returned to her home in Champaign. Afterwards, a petition to revoke her probation was filed and after a hearing the circuit court of Champaign County revoked probation and sentenced defendant to 3 years' imprisonment with credit for 155 days spent in the Champaign County jail. Defendant moved for credit on the sentence for the time spent at the Gateway House facility and this was denied by the trial court.

Since the order denying credit appertained to, and was grounded in, an order for probation, we construe the trial court's order as one denying credit for time spent on probation as provided in section 5—6—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4(h)).

The trial court also ordered that the sentence in the instant case was to run consecutively to prior sentences in two other cases for which defendant was on parole at the time of the instant proceeding.

Defendant raises two issues on appeal: (1) Whether the time spent in Gateway House pursuant to the provisions of the Dangerous Drug Abuse Act should have been credited on her sentence, and (2) whether the consecutive sentence was proper inasmuch as her parole status had not been ascertained at the time of sentencing.

Defendant's first issue turns on an interpretation of section 5—8—7(b) of the Unified Code of Corrections which reads as follows: "(b) The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3—6—3 of this Code." Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—7(b).

Her contention is that she was "in custody" during her stay at Gateway House. The original record in this cause contained no information as to the nature or environment of Gateway House. We, therefore, on our own motion remanded the cause to the circuit court of Champaign County for the purpose of taking supplemental testimony and making supplemental findings of fact on this subject. The supplemental record has been filed, together with supplemental briefs of the parties, and we are of the opinion that a sojourn in Gateway House is not custody, nor the equivalent thereof. The trial court was correct in denying credit.

The record discloses that the Gateway House program is a voluntary

one in which residents are free to come and go as they please; it is operated in a family-style setting in an old mansion; the doors are never closed and cannot be locked; residents are never physically restrained but persuasion is used instead. There is some regimentation during the first 60 days, which is considered an orientation period, and during the first phase of treatment, which lasts about 9 to 14 months, participants cannot leave Gateway House alone but are allowed to go out if accompanied by another resident. After nine months the resident is permitted to go out alone, if he has earned the privilege.

■■■ We agree with defendant that custody need not be penal in nature in order to obtain credit, and that under prior authority "confinement" is the function equivalent of "custody." (*People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 316 N.E.2d 769.) However, we disagree that the circumstances here present amounted to either one.

Defendant has cited to us cases from other jurisdictions in which credit was allowed for time spent in rehabilitation programs. An examination of those cases indicates that the restrictions placed upon the defendants there were much more extensive and the defendants more greatly circumscribed than in the instant case. In *Lock v. State* (Alas. 1980), 609 P.2d 539, the court found substantial restrictions on a defendant's freedom of movement in a rehabilitation program. Separation from the public generally appeared to impress that court. In *People v. Rodgers* (1978), 79 Cal. App. 3d 29, 144 Cal. Rptr. 602, a specific statute authorized credit for time spent in halfway houses, rehabilitation facilities, or similar institutions. *State v. Hersman* (W. Va. 1978), 242 S.E.2d 559, involved a juvenile detention center which the court found to be penal in nature.

The restrictions on defendant in the instant case were significantly less stringent than those in the cases just discussed and her separation from the general public was minimal. Her limitations appeared less burdensome than those of a student subject to the compulsory school attendance law.

■■ Defendant next challenges the consecutive nature of her sentence. At the sentencing hearing the trial court stated:

"The court will impose the sentence of three years (imprisonment) to run consecutively to the sentences heretofore imposed by this court in 76-X-783 and 76-X-794 for which the defendant is presently on parole from the Department of Corrections on a 15 to 45 month sentence. The sentences in 76-X-783 and 76-X-794 run concurrently.

So, for purposes of clarification, this sentence will run consecutively to those sentences which themselves are running concurrently."

Defendant's contention is that her final status insofar as the prior

convictions were concerned had not been determined at the time of sentencing in the instant case and therefore there is in fact no sentence, or sentences, to which the instant one may run consecutively. Defendant was on parole, as stated by the court, but no parole hearing had yet been held. Parole violation is governed by section 3—3—9 of the Unified Code of Corrections, which reads in part as follows:

"(a) If prior to expiration or termination of the term of parole or mandatory supervised release, a person violates a condition set by the Prisoner Review Board to govern that term, the Board may:

(1) continue the existing term, with or without modifying or enlarging the conditions; or

(2) parole or release the person to a half-way house; or

(3) revoke the parole or mandatory supervised release and reconfine the person for a term computed in the following manner:

(i)(A) For those sentenced under the law in effect prior to this amendatory Act of 1977, the recommitment shall be for any portion of the imposed maximum term of imprisonment or confinement which had not been served at the time of parole and the parole term, less the time elapsed between the parole of the person and the commission of the violation for which parole was revoked * * *." Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—9(a).

Defendant argues that since no disposition of her cases has been made, any possible sentence under section 3—3—9 by the Prisoner Review Board is still in limbo and therefore does not meet the precision requirements laid down in *People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190. She maintains that it is unknown whether any sentence will ever be imposed on the parole violation, and even if one is, its beginning and end are uncertain. We disagree. In *Walton*, it is stated:

"This sentence should be * * * so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning. * * * A sentence to commence in the future must be so certain that the termination of the first term and the commencement of the second may be ascertained from the record without the necessity of construing or supplementing it. Where the judgment order fails to clearly define the limits of the sentence intended to run consecutively, the cause must be remanded for proper sentence." 118 Ill. App. 2d 324, 333-34, 254 N.E.2d 190. Accord, *People v. Logan* (1974), 23 Ill. App. 3d 41, 318 N.E.2d 94; *People v. Toomer* (1958), 14 Ill. 2d 385, 152 N.E.2d 845.

However, the emphasis in these cases is on identification, not calculation. In *Logan*, for example, the sentence was to run consecutively to any other sentence which the defendant was serving, and in *Walton*,

" '[t]his sentence to be served consecutively to any other sentence which may have been imposed.' " (118 Ill. App. 2d 324, 333.) In *Toomer*, the prior sentence was identified by date and trial court number, as in the instant case.

It is not necessary that the sentences be spelled out with the nicety of a quadratic surd equation. Indeed, given the variables of good-time and other credits, no trial court could ever do so. The duty of the trial court is to make his intention clear and positively identify the sentences involved. The precise calculation of days and months as the sentences interact *inter sese* and with sentence credits must necessarily be left to the prison authorities. Such is the case at bar.

Pursued to its extreme, defendant's argument ends up in a logical absurdity: If a consecutive sentence cannot be imposed because the precise inception and terminus of the prior sentence cannot be determined, by the same token a concurrent sentence could not be imposed. Therefore, no sentence can be imposed. The essential point which defendant's argument ignores is that the prior sentences have not been expunged or altered. It remains to be seen only in what manner they will be served.

We agree with the statement in *People v. Starnes* (1980), 88 Ill. App. 3d 1141, 1150, 411 N.E.2d 125:

> "The mere fact that the precise date cannot be fixed as to one term's expiration and another's beginning is not fatal. For, by analogy, if such specificity were necessary, consecutive sentences subject to parole could never be validly imposed. That proposition was expressly rejected by the Illinois Supreme Court in *People v. Ferguson* (1951), 410 Ill. 87, 101 N.E.2d 522, *cert. denied* (1952), 343 U.S. 910, 95 L. Ed. 1327, 72 S. Ct. 643."

For the foregoing reasons the sentence imposed by the circuit court of Champaign County is affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.