**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Joseph Victor LUCERO, Respondent.**

No. 87SC455.

Supreme Court of Colorado,
En Banc.

April 10, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender, Philip A. Cherner, Deputy State Public Defender, Denver, for respondent.

VOLLACK, Justice.

Joseph Lucero, the defendant in the trial court proceedings, was sentenced by the trial court after pleading guilty to one count of felony menacing. The court of appeals vacated Lucero's sentence in part, and the state filed a petition for writ of certiorari asking this court to review the court of appeals unpublished opinion. *People v. Lucero*, No. 86CA1393 (Colo. App. Sept. 10, 1987). We granted certiorari, and the issue before us is whether the court of appeals correctly held that, when a defendant has been convicted of a felony that he committed while he was on parole, the trial court cannot impose a sentence to run consecutively to any reincarceration which may be imposed if the defendant's parole is revoked.

I.

In November 1980 Joseph Lucero (Lucero or the defendant) entered a guilty plea to second degree murder in Denver District Court. The judge in the 1980 case sentenced Lucero to ten and one-half years in the Department of Corrections (DOC) plus a period of parole. Five years later Lucero was released from DOC on parole.

Less than a year after his release, Lucero was still on parole when he was involved in the incident that gave rise to these proceedings. Lucero invited two individuals, Gomez and Williams, to drink with him at his home. When a dispute erupted, Lucero produced a knife and threatened Gomez. Lucero kicked Williams, cut Williams' forehead with the knife, and threatened to kill him. Gomez and Williams left and walked to the residence next door, where Gomez lived. Lucero walked to Gomez' residence and began kicking the door. Gomez left the house through a back window and contacted the police.

The defendant was arrested by police officers and placed in a police vehicle. When the officers walked away from the vehicle, Lucero unfastened the seat belt and escaped. He was apprehended the next morning, rearrested, and transported to Denver City Jail. Lucero was charged by information in the Denver District Court with felony menacing, second degree assault, escape and crime of violence. A plea bargain was reached and Lucero pled guilty to felony menacing in exchange for dismissal of the other charges.

In 1986, the district court judge sentenced Lucero to a six-year term in DOC. Because Lucero had been on parole for a prior felony at the time of this offense, the trial court further ordered that if Lucero was reincarcerated for parole revocation, the six-year sentence would run consecutively to the reincarceration on the 1980 second-degree murder sentence. After some argument, the court ruled: "If the original sentence is imposed and parole is revoked, this sentence will be consecutive to that."

The defendant appealed his sentencing. The court of appeals determined that the issue was "whether the possibility of a period of reincarceration by the parole board, if it were to revoke defendant's parole, is speculation about a future fact that may not be addressed by the trial court in sentencing for the offense at issue." *People v. Lucero*, No. 86CA1393 (Colo.App. Sept. 10, 1987) (not selected for official publication), slip op. at 3. After reviewing the statutory section governing parole, the court of appeals held that "the trial court erred by requiring the sentence to be served consecutive to any reincarceration which would be imposed if parole were to be revoked" and vacated that part of the sentence providing that the sentence would run consecutively to any incarceration arising from the pending parole revocation. Slip op. at 3–4. The state asked that this court grant certiorari to review the court of appeals unpublished opinion and we conclude that the court of appeals erred. We reverse and remand the case with instructions to reinstate the sentence imposed by the district court.

## II.

A sentencing court has discretion to impose a sentence "to be served concurrently with or consecutively to a *sentence already imposed* upon a defendant." *People v. Flower*, 644 P.2d 64, 65 (Colo.App. 1981), *aff'd*, 658 P.2d 266 (Colo.1983) (emphasis added).[1] After sentence has been imposed following a felony conviction,

> the person convicted shall have the right to one appellate review of the propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, *including the sufficiency and accuracy of the information on which it was based.*

§ 18–1–409(1), 8B C.R.S. (1986) (emphasis added). One of the factors a sentencing court may consider is the fact that a defendant is already subject to another sentence. *Flower*, 644 P.2d at 66. The limit on the sentencing court's discretion is that the facts on which a court relies must be accurate and not speculative. "Speculation or conjecture regarding possible future facts is not accurate information upon which a sentence may be crafted." *Id.*

## III.

In the case before us, the court of appeals applied a two-part analysis. First, it held that the trial court "erred in labeling the potential reincarceration of the defendant upon parole revocation as a 'sentence.'" Slip op. at 2. Second, the court decided "whether the possibility of a period of reincarceration by the parole board ... is speculation about a future fact that may not be addressed by the trial court in sentencing for the offense at issue." Slip op. at 2–3. Because we conclude that reincarceration for a parole violation is reincarcer-

---

1. We affirmed the court of appeals holding in *Flower*, but did not expressly address this issue in our opinion. We approve of the language used by the court of appeals in *Flower* and apply it in our analysis of the instant case.

ation on an already-imposed sentence, we arrive at a different conclusion.

## A.

■ The first issue to be addressed is whether we characterize reincarceration for a parole violation as a new sentence, or as reincarceration on the already-imposed sentence. This analysis, in turn, requires us to consider the statute that governs parole for individuals sentenced for a crime committed on or after July 1, 1979, but before July 1, 1981.[2]

> 17–22.5–303. Parole. (1) ... Upon a determination that the conditions of parole have been violated in any parole revocation proceeding, *the state board of parole shall continue the parole* in effect, *modify the conditions of parole* if circumstances then shown to exist require such modifications, *or revoke the parole and order the return of the offender to the institution in which he was originally received for a period of not more than six months.*

8A C.R.S. (1986) (emphasis added).[3] Under this statute, Lucero was subject to three possible dispositions as a result of his parole violation proceedings. The parole board could continue his parole, modify the conditions of his parole, or revoke parole and order him returned to the same DOC facility for a period not to exceed six months. Section 17–2–207(3) provides that "[o]ffenders on parole shall remain under legal custody and shall be subject at any time to be returned to a correctional facility." 8A C.R.S. (1986).

■ "The traditional view is that one who is on parole is granted a special privilege to be outside the walls of the institution while serving his sentence. ... At the same time the parolee remains in constructive custody and is subject to be returned to the enclosure at any time." *Hutchison v. Patterson*, 267 F.Supp. 433, 434 (D.Colo. 1967). We have often held that a defendant's release on parole "in no way alters the fact that he is still under sentence; that he is in technical custody; and that he is under supervision. Sections 17–1–206 and 207, C.R.S.1973." *People v. Salvador*, 189 Colo. 181, 183, 539 P.2d 1273, 1275 (1975); *accord Espinoza v. Tinsley*, 159 Colo. 62, 67, 409 P.2d 835, 838 (1966) (a parolee is "in the constructive custody of the state"); *Johnson v. Tinsley*, 157 Colo. 539, 544, 404 P.2d 159, 161 (1965).

A parolee is one who has been conditionally released from actual custody but is, "in the contemplation of the law, still in 'legal custody' and constructively a prisoner of the state." *Schooley v. Wilson*, 150 Colo. 483, 485, 374 P.2d 353, 354 (1962). As a result, a parolee's arrest for a parole violation "results in a transposition from constructive to physical custody of such parolee." *Id.* A parolee is considered to be "under a restraint imposed by law; he is not a free man. 'A prisoner on parole is not free from legal restraint by the penal authorities, ... but "is constructively a prisoner of the state in the legal custody and under the control of the state board of prison directors." ' " *Id.* (quoting *People v. Denne*, 141 Cal.App.2d 499, 297 P.2d 451 (1956)).

We have applied the same analysis in the context of the Uniform Mandatory Disposition of Detainers Act, holding that "a per-

---

2. Other subsections of section 17–22.5–303 apply to crimes committed between July 1, 1981 and July 1, 1984, between July 1, 1984 and July 1, 1985, and after July 1, 1985. *See* § 17–22.5–303(2), (4), (6).

3. The corresponding statute applicable to crimes committed prior to July 1, 1979 provided:

> **Time of parole not considered when inmate is reincarcerated.**
> ....
> (2) Parole shall not be construed in any sense to operate as a discharge of any inmate paroled under the provisions of law but sim-

ply a permit to any such inmate to go outside a correctional facility; and, if, while so at large, he behaves and conducts himself so as not to incur his reincarceration, he shall be deemed to be still serving out the sentence imposed upon him by the court and shall be entitled to good time the same as if he had not been paroled.... *If the said paroled inmate is returned to the department, he shall serve out his original sentence,* as provided for in this part 2.
§ 17–22.5–203(2), 8A C.R.S. (1986) (emphasis added).

son placed on parole remains in the legal custody of the department of corrections for the term of his sentence." *People v. Mascarenas*, 666 P.2d 101, 106 (Colo.1983), *on appeal after remand*, 706 P.2d 404 (Colo.1985). Clarifying the 1983 holding in *Mascarenas*, we recently stated in *People v. Campbell:*

> The holding in *Mascarenas* that the department of corrections maintains legal custody over a parolee is not limited to circumstances in which parole has been revoked. Inherent in the status of a parolee is that such a person is not in the physical custody of the department of corrections. *Although not in its physical custody, a parolee remains in the legal custody of that department.* § 17-2-207(3), 8A C.R.S. (1986). He is monitored by an officer of the department and must report periodically to the officer. *His freedom, while significantly greater than that experienced while in the physical custody of the department of corrections, remains limited.*

*People v. Campbell*, 742 P.2d 302, 309 (Colo.1987) (emphasis added).

The cases discussed above were decided under the former version of the parole statute,[4] but the legislative reorganization of that statute does not alter our analysis. The court of appeals has applied the same analysis under the current statute to sentencing for a crime committed after July 1, 1979, holding:

> The fact that a person has been released on parole in no way alters the fact that he is still under sentence; he is in legal custody, although that custody consists only of supervision. Also § 17-2-207, C.R.S. (1986 Repl.Vol. 8A) provides that an offender on parole remains under the legal custody of the Department of Corrections and may be subject at any time to be returned to a correctional facility.

*People v. Hunter*, 738 P.2d 20, 22 (Colo. App.1986), *aff'd*, 757 P.2d 631 (Colo.1988) (citations omitted).

We approve of the characterization of parole as "constructive custody." Because we agree with the "constructive custody" analysis, we conclude that a parolee, even though he can be reincarcerated after parole revocation for a maximum period of only six months under the subsection of the parole statute governing this case, is being reincarcerated for the original offense for purposes of sentencing.

### B.

■ Having concluded that reincarceration after parole revocation does not constitute a new sentence, we must determine whether a court that imposes sentence on a parolee who is subject to reincarceration for parole revocation has sufficient information to impose a consecutive sentence without engaging in impermissible speculation or conjecture. The issue becomes whether this information before the sentencing court is "speculative and conjectural— ... not accurate evidence upon which to base the sentence at hand." *Flower*, 644 P.2d at 66.

The defendant suggests that this case is sufficiently analogous to *People v. Flower* to require that we affirm the court of appeals ruling. We do not agree. In *Flower*, the trial court imposed a sentence "to be served consecutively with whatever sentence might be imposed subsequently in a case then pending in another courtroom." 644 P.2d at 65. The court of appeals in *Flower* rejected that aspect of the sentence, holding that "a trial court may not require a sentence otherwise properly imposed to be served consecutively *to some other sentence not yet imposed* in another pending case." *Id.* at 66 (emphasis added). Even though under section 17-22.5-303 a parolee can be reincarcerated only for a maximum period of six months on parole revocation, the fact remains that this type of reincarceration is not "some other sentence *not yet imposed* in another pending case." *Flower*, 644 P.2d at 66 (emphasis added). Other states have recognized this distinction. *See, e.g., Kansas v. Reed*, 237 Kan. 685, 703 P.2d 756 (1985) ("A trial court has no authority to direct a sentence

4. *See supra* note 3.

to run consecutively to a nonexisting sentence which might thereafter be imposed *in a pending case." Id.* at 690, 703 P.2d at 760 (emphasis added)); *Nebraska v. Blevins,* 223 Neb. 864, 394 N.W.2d 663 (1986) ("[I]t is impermissible for a sentencing court to require that a sentence, otherwise properly imposed, shall be served consecutively to a possible future sentence *on pending criminal charges not disposed of* at the time of the sentencing." *Id.* at 865, 394 N.W.2d at 664 (emphasis added)); *Oregon v. Mastrilli,* 62 Or.App. 464, 465, 661 P.2d 124, 124 (1983) ("Imposing a sentence consecutive to an as yet unexecuted sentence is impermissible.").

Illinois addressed this issue in *Illinois v. Freeman,* 95 Ill.App.3d 297, 50 Ill.Dec. 846, 420 N.E.2d 163 (1981). In *Freeman,* the defendant was awaiting her parole revocation hearing when the trial court ordered her new sentence to run concurrently with the sentences in the cases for which she was on parole. The Illinois court upheld this sentence, concluding that even though *"her final status insofar as the prior convictions were concerned had not been determined* at the time of sentencing in the instant case," the court's action was acceptable because "[t]he essential point ... is that the prior sentences have not been expunged or altered. It remains to be seen only in what manner they will be served." *Id.* at 301–02, 50 Ill.Dec. at 849–50, 420 N.E.2d at 166–67 (emphasis added).

The Colorado parole statute provides that the reincarceration period imposed at parole revocation cannot exceed six months, so a sentencing court knows that at the defendant's parole revocation hearing the defendant will either have his parole continued, have the conditions of his parole modified, or be returned to the institution for a period of reincarceration not to exceed six months.

Based on the nature of parole, the fact that a parolee has already been convicted and sentenced and is in "constructive custody" while on parole, and the limited consequences of parole revocation under the statute, we conclude that the information on which the sentencing court relied in this case was not impermissibly speculative. We reverse the court of appeals and remand the case with instructions to reinstate the sentence imposed by the district court.