THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARNELL WILLIS, Defendant-Appellant.

Fourth District   No. 4—91—0925

Opinion filed October 8, 1992.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

John B. Leonard, State's Attorney, of Mt. Sterling (Norbert J. Goetten, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial in Brown County on March 15, 1991, defendant, Carnell Willis, and his codefendant, Theron Jackson, were convicted of mob action. (Ill. Rev. Stat. 1989, ch. 38, par. 25—1(a)(2).) Defendant was sentenced to four years' imprisonment. He appeals his conviction, arguing: (1) defense counsel was ineffective because he did not comply with the requirements of section 3—8—10 of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10), entitled "Intrastate Detainers," thereby defeating dismissal of the charge against him based on denial of his right to a speedy trial; and (2) the State committed reversible error by cross-examining defendant about whether he had a drug problem and past arrests. Defendant appeals his sentence, arguing the trial judge improp-

erly considered a facsimile (fax) of his prison disciplinary record as an aggravating factor in sentencing. He also contends the trial judge's sentence was not sufficiently specific because it did not designate the sentence to which the imposed sentence was made consecutive. We affirm defendant's conviction and remand only for clarification of which sentence the mob action conviction sentence is made consecutive.

## I. FACTS

### A. *Defense Counsel's Pretrial Actions*

The offense of which defendant was convicted arose from an attack on Gregory Pope, another inmate in the Western Illinois Correctional facility. Defendant was charged by information on March 15, 1991. On April 14, 1991, defense counsel was appointed to represent defendant. On April 15, defense counsel filed a motion for a speedy trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 103—5).

On September 12, 1991, defense counsel filed a motion to dismiss because more than 160 days had elapsed since the State charged defendant. The court denied the motion, ruling that when the defendant is in a Department of Corrections (DOC) facility, the procedures listed in the intrastate detainers provision must be followed in order to preserve a speedy-trial issue.

### B. *Trial Testimony*

Pope testified he met defendant, codefendant Jackson, and the inmate who struck him, Terrance Davis, a few days before the incident. Pope was being extorted by inmate Lee Johnson. Defendant, Jackson, and Davis approached Pope and told him they could protect him from Johnson. Pope stated defendant, Jackson, and Davis gave him a commissary list on three occasions and ordered him to obtain the items listed. They warned if he did not obtain the items he would get hurt.

On the day the incident occurred, defendant, Jackson and Davis followed Pope into his cell after dinner. Pope had notified prison officials of Johnson's extortion attempt and the officials agreed to move him to another cell. When defendant, Jackson, and Davis noticed Pope's things were packed, they called him a "stool pigeon" and said "stooling" was not tolerated in prison. According to Pope, defendant told Davis to "bring the G down" and Davis hit Pope twice in the face.

Randy Spertzel, an inmate and Pope's friend, testified he saw three men in Pope's cell the night of the attack. The men told Spert-

zel to leave them alone. Later that night, defendant came to Spertzel's cell and told Spertzel if he said anything they would put "a hit" out on him.

After Davis struck Pope, the men gave him an aspirin and discouraged him from going to the infirmary. They ultimately allowed him to seek medical treatment, but told him he would be hurt if he did not report that he fell and hurt his face. He required surgical placement of metal plates and screws in his head.

Prison official Marty Winston interviewed Pope in the prison health unit shortly after the incident. Pope told Winston the cell numbers of the men involved. Pope also identified defendant, Jackson, and Davis from a six-photograph array.

Davis, who pleaded guilty to aggravated battery for striking Pope, testified that when he entered Pope's cell, defendant and Jackson were present. Davis asked Pope what he told the prison officials about Johnson. When Pope admitted he told the officials about Johnson's extortion, Davis hit Pope in the face. Davis testified neither defendant nor Jackson told him to strike Pope.

Defendant's and Jackson's testimony supported Davis' testimony. Defendant testified he did not know Davis was going to strike Pope and that he and Jackson broke up the fight. During cross-examination, the State asked defendant if he had a drug problem. Defendant stated he had no drug problem. Over defense counsel's objection, the trial judge permitted the State to question defendant about past drug arrests. After defendant admitted three drug-related arrests, defendant conceded he had also received a six-year term for delivery of controlled substances. Although the State tried to question defendant about an additional six-year term he was allegedly serving for delivery of controlled substances, defendant denied he was currently serving a 12-year term.

### C. Sentencing Hearing

During the December 11, 1991, sentencing hearing, the State presented testimony by William Parker, a correctional officer at the Western Illinois Correctional Center. Parker obtained a fax of defendant's prison disciplinary record from the Pontiac Correctional Center. The record indicated that during his incarceration, defendant had received 24 disciplinary reports. Seven of these infractions were major. The trial judge admitted this report over defense counsel's objections and permitted it to be used as an aggravating factor in defendant's sentencing.

## II. ANALYSIS

### A. *Ineffective Counsel*

Defendant argues defense counsel was ineffective in his efforts to ensure defendant received a speedy trial because counsel filed the motion demanding speedy trial pursuant to section 103—5 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(a)), rather than the provision applicable to inmates during incarceration, a proper demand under which requires the defendant be tried within 160 days (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10).

■■ Resolution of defendant's speedy-trial issue requires consideration of the speedy-trial provision of the Code in conjunction with the intrastate detainers provision. Section 103—5(a) of the Code states, in relevant part, every person in custody in the State for an alleged offense shall be tried within 120 days from the date he was taken into custody. (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(a).) Section 103—5(b) of the Code provides that persons on bail or recognizance shall be tried within 160 days from the date defendant demands a trial. (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(b).) Unless the delay is caused by defendant, failure to try him within the statutory time is cause for the discharge of the accused. Ill. Rev. Stat. 1989, ch. 38, par. 103—5(d).

■ Section 3—8—10 of the Unified Code makes section 103—5(b) of the Code applicable to defendants "committed to any institution or facility or program of [DOC]" who have any untried complaints or indictments pending against them. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) Defendant was in DOC custody when this mob action charge was filed against him. Defense counsel was therefore required to file a speedy-trial demand pursuant to section 3—8—10 of the Unified Code and include a statement of the place of present commitment, the term, and length of remaining term, charges pending against defendant, and the county where the charges were lodged, addressed to the State's Attorney of the county where he is charged, with a copy to the clerk of the court and the proper DOC officer of the facility to which defendant is committed. The State's Attorney would then have been required to ensure defendant was brought to trial within 160 days of the demand. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) However, because defense counsel requested a speedy trial for defendant pursuant to section 103—5 of the Code, the 160-day period never began to run.

The State contends defense counsel was not ineffective because the mob action charge against defendant would not have been dis-

missed even if the appropriate speedy-trial demand had been made under the intrastate detainers provision (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10). If a proper demand under section 3—8—10 of the Unified Code had been made, the State would simply have tried defendant within the requisite 160 days.

To establish counsel was ineffective, defendant must show counsel's representation fell below an objective standard of reasonableness and it is reasonably probable that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Horton* (1991), 143 Ill. 2d 11, 23, 570 N.E.2d 320, 325; *People v. Jackson* (1987), 162 Ill. App. 3d 476, 482, 515 N.E.2d 390, 394.

The State directs us to this court's ruling in *People v. Keys* (1990), 195 Ill. App. 3d 370, 375-76, 552 N.E.2d 285, 289, in arguing defense counsel's action did not fall below an objective standard of reasonableness because defendant did not instruct his attorney to demand a speedy trial and because the decision on whether to demand a speedy trial is a strategic matter left for defense counsel.

Our ruling in *Keys* is inapplicable to the present scenario. There, defendant requested that the matter be resolved as soon as possible but made no specific request for a speedy-trial demand, and defense counsel explained his reasons for not filing a speedy-trial demand. (*Keys*, 195 Ill. App. 3d at 371-72, 552 N.E.2d at 286-87.) Although whether to demand a speedy trial may be a strategic decision, defense counsel in the present case *intended* to demand a speedy trial on behalf of defendant, but did so incorrectly.

■ Defense counsel maintains when he filed the motion he did not know defendant was incarcerated in the State penitentiary. The record available to defense counsel indicated defendant was incarcerated in a DOC facility. The notice counsel received that he had been appointed to represent defendant indicated a copy was also sent to defendant and to DOC. The State's Attorney's April 4, 1991, writ of *habeas corpus* summoning defendant to testify was sent to the warden at Pontiac Correctional Center. The order of continuance noted a copy went to defendant and to DOC. Defense counsel filed the speedy-trial motion on April 15, 1991. The record already included these indications defendant was in DOC custody.

Defendant correctly notes that by the preliminary hearing held on April 29, 1991, defense counsel knew defendant was an inmate. Testimony at the hearing included an account of what allegedly occurred between the inmates when Pope was injured. As a defense attorney,

defense counsel had a duty to represent defendant competently. Competence requires the legal skill, knowledge, thoroughness and preparation reasonably necessary for the representation. (134 Ill. 2d R. 1.1(a).) The intrastate detainers provision became law effective November 13, 1973. See Pub. Act 78—939, §1, eff. Nov. 14, 1973 (1973 Ill. Laws 3023, 3032).

In *People v. Davis* (1981), 92 Ill. App. 3d 869, 874, 416 N.E.2d 85, 88, the court stated:

> "The statutory speedy trial scheme provides that a person in custody must be tried within 120 days (section 103—5(a)); persons on bail or recognizance (section 103—5(b)) and persons who have been committed to the Department of Corrections for other offenses (section 3—8—10) must be tried within 160 days of their demand for trial. Those persons imprisoned in another State against whom a detainer has been lodged must be brought to trial within 180 days after making demand for trial. (Section 1003—8—9, art. III(a).) We note too that a prisoner's right to a speedy trial under the Federal Speedy Trial Act (18 U.S.C.A. §3161(j) (Supp. 1980)) also requires a demand for trial. *United States v. Bryant* (4th Cir. 1979), 612 F.2d 806, 811.
>
> As defendant failed to comply with the terms of the intrastate detainer statute to which she was subject the trial court erred in granting her motion for discharge."

There, the defendant was committed to DOC on a Cook County judgment, and the trial court granted a motion for discharge and dismissed pending Du Page County charges pursuant to section 103—5(a) of the Code, although no speedy-trial demand under section 3—8—10 of the Unified Code had been made. The Second District Appellate Court reversed that judgment. See generally 5 L. Pieczynski, Illinois Practice §10.3, at 274 (statutory right to a speedy trial); §10.24, at 285-86 (intrastate detainer act) (1989).

Defense counsel should have known that section 3—8—10 of the Unified Code governed defendant's right to a speedy trial. His actions in this case with respect to the speedy-trial motion fell below a reasonably competent standard.

To conclude defense counsel's conduct rose to the level of incompetency requiring reversal of the conviction, however, also requires a finding it is reasonably probable the outcome of the proceeding against defendant would have been different had defense counsel acted competently. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698,

104 S. Ct. at 2068; *Horton*, 143 Ill. 2d at 23, 570 N.E.2d at 325; *Jackson*, 162 Ill. App. 3d at 482, 515 N.E.2d at 394.

The State contends even if counsel was ineffective, the error was harmless because the evidence presented against defendant was overwhelming. This argument has nothing to do with a claim of ineffective assistance of counsel, which allegedly violated defendant's statutory right to a speedy trial.

Defendant was incarcerated for 210 days between the date defense counsel filed the speedy-trial motion and the date of trial. Defendant should have been tried within 160 days. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—10.) The record does not indicate any reason for the delay. Although the State may have had no legal duty to bring defendant to trial where it relied on a State law that required defendant to make a proper demand for trial (*Jackson*, 162 Ill. App. 3d at 480, 515 N.E.2d at 393), neither should it evade a defendant's right to a speedy trial. (*Cf. People v. Fosdick* (1967), 36 Ill. 2d 524, 528, 224 N.E.2d 242, 245 (use of voluntary dismissal without notice to defendant).) The record indicates it did so in this case.

The State's brief contains the following concession:

> "[The] State's Attorney *** was clearly apprised that the speedy trial was controlled by the Intrastate Detainer Act and that this 160-day period could not begin to run unless the formal requirements of section 3—8—10 were fulfilled. Had [defense counsel] refiled under the controlling statutory provision and preserved defendant's speedy trial request, it is much more than probable that [the State] would have brought the case to trial within the 160-day period."

The State made a similar argument during the hearing on the motion to dismiss the charges against defendant. The State's Attorney *stipulated* there was no mechanical reason, no "court-clogging" reason, that prevented the case from being brought to trial within the requisite 160 days. It was not tried within this time period because the "requisite conditions to commence the running of the 160-day period were not satisfied." The prosecutor here is not contending the press of duties prevented proper preparation of the case or that witnesses were unavailable. He does not suggest other cases with proper speedy-trial demands preempted this defendant's case from being brought to trial. He does not assert he was understaffed or over-burdened. We commend the prosecutor on his candor, but not his practice. The State simply relied on defense counsel's error in failing to set defendant's trial within 160 days.

The prosecutor is an administrator of justice and an advocate who must exercise sound discretion in the performance of his or her functions. (ABA Standards, Criminal Justice §3—1.1 (2d ed. Supp. 1986).) We question the exercise of that discretion in this case. A prosecutor should not intentionally use procedural devices to support delay when there is no legitimate basis. (ABA Standards, Criminal Justice §3—2.9(a) (2d ed. Supp. 1986).) The State's Attorney knew defendant was incarcerated in DOC. The State's brief indicates defendant's trial was not delayed because of case backlog. Rather, the State's Attorney did not try defendant within the mandatory 160 days because he knew defense counsel's speedy-trial demand was in improper form. This was an inappropriate reliance on the procedural requirements of the intrastate detainers provision, particularly when the information that would have been contained in a proper demand was already known to the prosecutor.

However, the record does not support the conclusion that if defense counsel had filed the appropriate speedy-trial demand the State still would not have brought defendant to trial within 160 days. We cannot presume the State would not have prosecuted defendant within the required time. We simply do not know what would have happened had defense counsel filed a proper intrastate detainers motion. Based on the evidence, defendant cannot meet the second prong of *Strickland, i.e.,* a reasonable probability that but for his counsel's error in preparing the speedy-trial demand, the result of the proceeding would have been different. Despite this inadequacy in legal representation by defense counsel, and conduct by the State's Attorney which was imprudent for one in that position, we are not bound to reverse defendant's conviction on this issue.

Defense counsel should competently prepare their cases. Criminal defendants have a right to adequate representation to ensure their statutory, as well as constitutional, rights are protected. Prosecutors should proceed with trial in a timely manner. If counsel in this case properly carried out their duties, defendant would have been timely prosecuted and would have had no timeliness complaint to raise on appeal. In addition, the lawyers in this case provide reason for defendants and the public to be suspect when dealing with members of the legal profession. Both prosecution and defense have obligations to their clients to advance justice and promote faith in the process. Neither goal is achieved by the examples set in this case.

## B. *Improper Cross-Examination*
Defendant argues the State committed reversible error when it

improperly cross-examined him on whether he had a drug problem without ever supporting that point with proof. He also argues error occurred when the State cross-examined him about past drug-related arrests. He contends this was improper impeachment because it did not show he had a problem with drugs nor was it related in any way to the mob action charge. The State did not prove the arrests or convictions with any documentary evidence, or show defendant was convicted of all the arrests the prosecutor cited.

The cross-examination was as follows:

"Q. [By prosecutor]: You have got a little problem with drugs, haven't you, Mr. Willis?

A. I wouldn't say so.

Q. You wouldn't?

A. No. I wouldn't.

Q. Arrested by the Chicago P.D. on January 10 of 1983 for Possession of Cannabis?

A. Yes.

Q. Arrested by Chicago P.D. on June of Possession of Cannabis?

MR. BRENNER: Objection to this impeachment. He's going with arrests rather than felony convictions or crimes of dishonesty."

The trial judge permitted the cross-examination to proceed based on the State's reasoning, *i.e.*, because defendant had denied he had a drug problem, the State could attempt to impeach his testimony by eliciting evidence suggesting he had been a drug user.

"Q. So in addition to your arrests for cannabis in -83 and -84, [defendant], you were also arrested in September '85 by the Chicago Police Department for Possession of Cannabis; isn't that correct?

A. Yes.

Q. And since then you were sentenced to six years for Delivery of Controlled Substances in 1988; is that correct?

A. Yes, it is.

Q. And you also got another six-year sentence for Delivery of Controlled Substances, didn't you?

A. No, I didn't. I get three. I got—Wait a minute. No I only got one six-year sentence. I don't understand what you—

Q. You are not serving a 12-year term right now?

A. No. No, I am not."

The State concedes the prosecutor's cross-examination of defendant Willis about past drug-related arrests was improper, but contends

the error was rendered harmless by the evidence of defendant's guilt and the cumulative nature of the testimony elicited. As to the cross-examination on past drug-related convictions, the State contends it was not cross-examining defendant under the method afforded by the rule allowing impeachment by introduction of conviction records. Rather than seeking to prove the fact of the drug convictions, the State maintains it was attempting to elicit evidence suggesting defendant was a drug user. The State argues defendant's admission he had been sentenced on two drug charges established he was a drug user without the prosecutor furnishing records or authenticated copies of the convictions, and written proof was not necessary. It also argues defendant has waived review of these matters.

Defendant responds that when asked whether he had a drug problem, he denied it. He contends neither drug-related arrests nor sentences proved he had a drug problem or used drugs. He also argues the State did not use his drug-related convictions to prove he had used drugs. Instead, the prosecutor claimed in closing that defendant had admitted he had a drug problem and suggested defendant tried to conceal this problem from the court.

### 1. Waiver

■ To preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 884, 572 N.E.2d 1219, 1226.) Here defendant's trial objection was addressed to one point, the impeachment by arrests. All other aspects of defendant's argument have been waived by virtue of the failure to object at trial. All grounds have been waived by the failure to include them in a post-trial motion. It is elemental that the admission of evidence cannot be assigned as error if no objection is made. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 239.) In addition, a specific objection waives all grounds not specified. *People v. Barrios* (1986), 114 Ill. 2d 265, 275, 500 N.E.2d 415, 419; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.2, at 5-7 (5th ed. 1990).

### 2. Consideration on the Merits

Defendant argues these matters destroyed his credibility and affected the outcome of his trial. (See 134 Ill. 2d R. 615(a).) He directs us to the trial judge's comment before pronouncing judgment that the case presented a question of credibility. The case necessarily presented a credibility issue. Defendant's witnesses were himself, code-

fendant Jackson, and Davis, who had pleaded guilty to the aggravated battery of Pope; the testimony of defendant and Jackson could reasonably be viewed as self-serving, and Davis had nothing to lose by testifying on behalf of defendant and codefendant Jackson, since he had already been sentenced. By contrast, the victim and the other witnesses who identified defendant and codefendant Jackson, and whose testimony intimated defendant and codefendant Jackson had ordered the attack on Pope, had nothing to gain by their testimony and had no motive or reason to lie.

■ The cross-examination on whether defendant had previously been arrested was improper. Defendant's objection should have been sustained. "[I]t is fundamental that mere proof of an individual's arrest cannot be used against that individual in a criminal case since the evidence of an arrest would prejudice the defendant in the eyes of the jurors. (*People v. Bennett* (1953), 413 Ill. 601[, 110 N.E.2d 175]." (*People v. Lampkin* (1983), 98 Ill. 2d 418, 430, 457 N.E.2d 50, 56.) Evidence which suggests a defendant committed crimes other than the one charged is generally inadmissible unless relevant to some issue in the case. *People v. Herrett* (1990), 137 Ill. 2d 195, 207, 561 N.E.2d 1, 6; *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.

Likewise, the rule has been stated it is improper to cross-examine a defendant about a conviction for a crime. (See, *e.g., People v. Flynn* (1956), 8 Ill. 2d 116, 120, 133 N.E.2d 257, 259; *People v. Adams* (1982), 106 Ill. App. 3d 467, 472, 435 N.E.2d 1203, 1207.) The proper method for impeaching a defendant's credibility is by means of the record of conviction or an authenticated copy thereof. (See *People v. Madison* (1974), 56 Ill. 2d 476, 488, 309 N.E.2d 11, 18.) An exception to the rule permits cross-examining a defendant about convictions when he has testified about his prior convictions on direct examination. (*People v. Johnson* (1990), 206 Ill. App. 3d 318, 322, 564 N.E.2d 232, 235.) Cross-examination of a defendant about a prior conviction is improper where direct examination has not covered the subject. *Adams*, 106 Ill. App. 3d at 472, 435 N.E.2d at 1207.

Nevertheless, reversible error does not result unless the error has deprived defendant of substantial justice or influenced the determination of his guilt. (*Madison*, 56 Ill. 2d at 488-89, 309 N.E.2d at 18; *Adams*, 106 Ill. App. 3d at 472, 435 N.E.2d at 1207.) We note that *Adams* and other cases cited on this point arose in the context of jury trials. As stated in *Madison*, this rule is founded upon the possibility that a defendant might be prejudiced during a jury trial if he is forced to testify concerning prior convictions. (*Madison*, 56 Ill. 2d at 488,

309 N.E.2d at 18.) This case was a bench trial with the circuit judge sitting as trier of fact.

As to the cross-examination on whether defendant had a drug problem, or the suggestion of drug use, it is under limited circumstances that drug use may be relevant to impeach a witness' ability to observe, or narcotics addiction to undermine a witness' credibility (see *People v. Smith* (1968), 41 Ill. 2d 158, 161, 242 N.E.2d 198, 200). (See generally 6 L. Pieczynski, Illinois Practice §22.64, at 48 (1989); R. Hunter, Trial Handbook for Illinois Lawyers, Criminal §40.16, at 547-49 (6th ed. 1989).) We fail to see how any of these or other circumstances made this evidence relevant to this case. Here, no objection was made below which would have permitted the trial court an opportunity to rule on the admissibility or lack of relevance of this evidence, nor was a motion to strike made when no proof of drug use or a drug problem was presented. Neither was an objection made to the prosecutor's comment, albeit erroneous, in closing argument.

In a bench trial, it is presumed the court considered only competent and proper evidence in reaching its decision. (*People v. Nuccio* (1969), 43 Ill. 2d 375, 394, 253 N.E.2d 353, 363.) This presumption is negated when the trial court admits improper evidence over defendant's objection and the record shows it was improperly considered, as in the case cited by defendant, *People v. Alford* (1982), 111 Ill. App. 3d 741, 744, 444 N.E.2d 576, 579. Unlike *Alford*, here only the impeachment by arrests was objected to and nothing in the record suggests the trial court gave this or the other evidence now complained of any consideration. There was sufficient proper evidence to sustain the conviction and the evidence was not so closely balanced to require a new trial.

### C. *Facsimile as Evidence at Sentencing*

Defendant argues that before imposing sentence, the trial court should not have considered a fax of his prison disciplinary reports as an aggravating factor. He contends the State failed to establish a proper foundation for admission because it did not establish firsthand knowledge of the reported incidents. He directs us to the Illinois Supreme Court ruling in *People v. Smith* (1990), 141 Ill. 2d 40, 73, 565 N.E.2d 900, 914. The *Smith* court ruled prison incident reports are not admissible at a *trial*. (*Smith*, 141 Ill. 2d at 78-79, 565 N.E.2d at 917.) Evidence at the sentencing stage was not at issue.

■ At the sentencing stage, the trial judge is not limited to information which would be admissible at the trial stage. The judge must ensure the information is accurate and not allow the information to

prejudice the proceedings. However, he is not restricted to evidence which establishes guilt. Any evidence, within reasonable bounds, which tends to aggravate or mitigate the appropriate sentence can be considered. *People v. Adkins* (1968), 41 Ill. 2d 297, 300-01, 242 N.E.2d 258, 260.

Parker testified he obtained the disciplinary records from Pontiac Correctional Center, the facility to which defendant had been transferred. Defendant provides no specifics as to why the reports should have been viewed as inaccurate or unreliable.

Defendant also argues if proper foundation were laid for admission of the fax, it was still inadmissible because the violations had not resulted in "convictions." He relies on *People v. Thomas* (1983), 111 Ill. App. 3d 451, 454, 444 N.E.2d 288, 290, in which this court ruled a presentence report which listed only arrests, and not convictions, was not admissible. He also contends the evidence in his case was similar to evidence ruled inappropriate in the Fifth District Appellate Court ruling in *People v. Hoga* (1982), 109 Ill. App. 3d 258, 264, 440 N.E.2d 411, 415.

The State does not counter defendant's reliance on the above two cases. It instead relies on an earlier Illinois Supreme Court ruling in *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344. It directs us to the following language in *La Pointe*:

> "Whether a defendant had been prosecuted and convicted for other misconduct, proof of which is offered at a sentencing hearing, is not, in our judgment, controlling as to its admissibility. More important are the questions of relevancy and accuracy of the information submitted. Those questions are, of course, initially determined by the trial judge in the exercise of an informed discretion." *La Pointe*, 88 Ill. 2d at 498, 431 N.E.2d at 351.

Although the *La Pointe* court's approval of testimony about prior criminal conduct was admitted, in relevant part, because a witness testified about this conduct and was subject to cross-examination, we do not view its reasoning controlling in this case. *La Pointe*, 88 Ill. 2d at 498, 431 N.E.2d at 351.

The *La Pointe* ruling, this court's previous ruling in *Thomas* (111 Ill. App. 3d at 454, 444 N.E.2d at 290), and the *Hoga* ruling (109 Ill. App. 3d at 264, 440 N.E.2d at 415), all addressed the admission of prior arrest records in the absence of any direct testimony to corroborate the alleged conduct.

Defendant compares a record of prison disciplinary charges to a report of previous arrests. The prison disciplinary reports appeared

trustworthy and accurate. Defendant did not indicate he attempted to appeal the allegations.

The State prison disciplinary reports were relevant to the appropriate sentence defendant should receive because they were related to the likelihood he would commit other offenses. Defendant aptly notes his previous disciplinary charges played a role in the trial judge's sentencing decision. Defendant received a four-year term while his codefendant, who had only minor disciplinary infractions, received 18 months.

Although there were additional reasons the trial judge could reasonably have sentenced defendant to a longer term than that imposed on his codefendant, the trial judge did not abuse his discretion by considering the disciplinary infractions. Defendant's participation in the attack on Pope represented his disregard for, among other things, the safety of fellow inmates. His additional previous disciplinary infractions were relevant to his rehabilitative potential.

### D. *Insufficient Explanation of Sentence*

Defendant next argues the trial court erred by not identifying the sentence to which his mob action sentence was made consecutive. After sentencing defendant to 12 years' imprisonment, the trial judge stated, "[t]he sentence[s], of course, Mr. Leonard, are consecutive sentences to what they are now serving with the [DOC] with the State of Illinois."

■■ The State concedes the trial judge erred by not specifically identifying which sentence(s) the mob action sentence would follow. We agree the trial judge's error requires the case be remanded for further clarification. A sentence must be specific so it does not require additional construction. *People v. Freeman* (1981), 95 Ill. App. 3d 297, 301, 420 N.E.2d 163, 166; *People v. Logan* (1974), 23 Ill. App. 3d 41, 42, 318 N.E.2d 94, 95-96.

Defendant's case must be remanded for the limited purpose of allowing the trial judge to state with particularity the sentence(s) to which the sentence in this case is to be consecutive.

Affirmed and remanded with directions.

GREEN, P.J., and COOK, J., concur.